Roane, Judge.
This is a case in which is drawn in question the rectitude of the appellee’s conduct as administrator of William Ronald, in reference to the several claims stated in the pleadings, and set up in bar of the appellant’s demand. But as no difficulty, or diversity of sentiment, exists with the court,-as to any other point in the cause except that concerning Andrew Ronald’s judgment, I beg leave to confine my few observations'solely to that point, referring for my opinion on the others to the decree which has been considered and agreed upon by the judges.
It will be necessary to take a short view of the grounds upon which this case came before a court of equity.
The appellant Mayo had got a regular judgment by default against the appellee as administrator on a bond ; and the administrator upon an execution being issued thereon exhibited his bill of injunction, stating that through the misconduct or inadvertence of th 3 clerk, the office judgment had not been set aside and the plea of payment entered, and that it was his intention in iue time to have put in the plea *539 of fully administered. There is no denial of this misconduct or inadvertence, on the part of Mayo; and the allegation of the appellee concerning it, is as well supported by testimony as can reasonably be expected in such a case. The chancellor granted the injunction, and authorized the appellee to plead in Powhatan court j to put in such pleas as he should be advised were proper; and that the verdicts or judgments given on issues joined on such pleas should be certified to his court. A verdict is found on such pleas in Powhatan court for the plaintiff, but is set aside by the chancellor and issues directed to be made up and tried on the pleas of the appellee in the district court of Richmond, and to be certified. An agreement is made by the counsel on both sides, in which, referring to the pleas, other facts are specified, and the law submitted to the court. I shall presently have occasion to state some of the facts agreed therein more particularly. On the 1st of March, 1797, a-decree is made, by the chancellor, stating that the parties waved the trials before the district court, and submitted the decision immediately to the court of chancery; and the decree is in favour of the appellee as to the point in question.
Upon this state of the case it is to be considered whether the appellee’s counsel was correct in contending that this was a case in which strict and rigid law must prevail, or not?
By strict law he was remediless. A legal judgment is in full force against him ; and it is in consequence of his applying to a court of equity to administer equity to him that his case is now before us. It is an uniform maxim of that court, that he who seeks equity shall himself submit to what is equity.
The case in question being carried to the forum of the chancellor, nothing can deprive him of his jurisdiction to do equity. The jury who were originally to try the issues, are not only chancellors themselves, but wefe his juryj their verdict could never be conclusive with him until his conscience was satisfied, and the agreement of the parties to wave that trial and submit the determination immediately *540 to the court, if it did not fortify his power, certainly did not, and evidently could not, abridge it in the respect in question.
This court then, standing in the place of the chancellor and revising his decree, must take such a liberal and comprehensive view of the case, as will embrace it under all its circumstances, and enable them to decide it according to the principles of equity. But, in deciding this case against the claim of the appellee in the point in question, 1 do not think it will be necessary to transcend the just limits, which a court of law would prescribe, for itself. A court of law, I mean, who would regard the reason and substance of the law rather than its letter: who wish so to construe the law as to answer its end and purpose and promote substantial justice, rather than to make it an instrument of fraud, chicane and injustice.
"Whatever may be thought of my present opinion relative to the construction and application of the doctrines of the law now in question, I beg it may be understood, that I do not mean to relinquish a ground I have often taken in this court. I mean that of supporting the rules of law according to their fair and just interpretation, even though a particular injustice might ensue therefrom; the latter being in my opinion a more tolerable evil, than that which would arise from keeping the laws of the country in a state of continual fluctuation and uncertainty. But I trust that I shall never become an advocate for that system which shall apply the strict letter of the law in opposition to its substantial meaning : which will apply a rule of law to a case which is wholly without the reason of it.
With whatever liberality the eye of a court of equity may view the circumstances of this case, I presume it will be conceded on all hands, that in a case of mere legal assets, a court of equity is as much bound as a court of law to respect the priority established, by law, for the payment of some description of debts in preference to others: and, if so, it is a clear answer to the arguments which were used, to shew, that, in equity, all debts are considered as equal.
*541 The assets in the present case are merely legal assets.
I believe I shall scarcely discuss with the appellee’s counsel any of the legal doctrines they have contended for, considered as general doctrines and applicable to cases in general.
I shall readily admit, as a general rule, that an executor having no notice of a bond debt, which notice must also be by suit, may give judgment in favour of a simple contract creditor, which shall be afterwards a bar to a bond creditor.
At the same time that I make this admission, I contend that the legal preference given to bond creditors is a substantial something, not repealable at the will of an executor under every possible state of circumstances; but the rule just admitted is not without its reason : and its reason is, that otherwise a bond creditor might ruin an executor by keeping his bond in his pocket. It was justly said, by the appellant’s counsel, that this rule was intended as an armour of defence to an executor, and not a weapon of attack; as a mean to save himself from ruin, and not to prostrate rights guaranteed to others, and repeal a provision established in their favour by doctrines equally well established with the one under which such right of attack is contended for.
This reason of the law shews incontestibly, that the law itself does not apply to extreme cases; cases wherein the executor is under no possible danger of injury$ cases where the only possible effect of its applicability, would be to repeal the doctrine of the law establishing the right of priority.
I will suppose, for instance, that a man having long resided in Richmond, and considerably indebted there, by bond, should remove into the county of Monongalia; that there he should suddenly die, and the next day an administrator not only qualify, but consent with a simple contract creditor to take out a writ instantly and confess judgment thereupon: Under these circumstances it is .evident that no human diligence, on the part of the bond creditors at Richmond, could secure to them their legal priority; and if a court would tolerate such conduct in an administrator, in vain has the egislature established a right of priority in their favour; in *542 vain would such court attempt to shelter itself from the imputation of making the law an instrument of injustice, and that contrary to its design and reason.
But even this extreme case, which puts the absurdity of such doctrine in a clear point of view, may still be carried further, by supposing the administrator to go immediately after his qualification into a remote county, unknown to the creditor, and there confess a judgment to his prejudice.
Those who would contend for the doctrine under these circumstances, must indeed be said to misapply the law, and stick by the letter in opposition to the reason of it.
If, then, this rule does not apply to extreme cases (to which the letter of this particular rule, standing singly, may perhaps extend) how shall the doctrine be construed and applied ? My answer is, that it is so to be construed and-applied as to conform to the reason on which the rule was founded, and to consist with other rights and other doctrines of law equally sacred, and equally well established.
This view of the subject precludes the necessity of a particular examination of the cases cited in the argument. The doctrines therein laid down, as now qualified, are not controverted by me, but are supported by cases in which the executor is held to be justified in paying simple contract debts, unless he has timely notice of bond debts, 1 Mod. 175: Which expression, timely notice, seems clearly to imply a reasonable time in favour of the bond creditors, and to exclude great haste and precipitation on the part of the executor.
But it is asked, what time the court can prescribe for the bond creditors to come in? and 1 Wentw. Off. Ex. 161, is cited ; which says that no time is fixed, and intimates that the subject is fit for legislative consideration. I answer that I admit that no time is fixed, but contend that, in the last passage, the author has reference to the case of creditors in general; he had not in view an extreme case such as the present. It is not necessary that this court in now deciding against the appellee should fix any time as to cases in gene *543 ral. Every case must stand on its own foundation. I wish to be understood to consider this merely as an extreme case; that such a case cannot arise without a collusive and mala fide conduct on the part of the administrator; and that this collusion must irresistibly be inferred, in the present case, from the unusual and unnecessary despatch used to prefer this simple contract creditor under all the circumstances of the transaction, and under a perfect knowledge that the estate was very much indebted by debts of a higher dignity. One of the appellee’s counsel admitted that the doctrine did not extend to cases of collusion. On this ground I meet him ; and on this ground it is wholly unnecessary to fix any precise point of time within which bond creditors, in general, must come in. I disclaim the exercise of such a power, as being unnecessary in the present case, and beyond the authority of this court.
The present case, although not so absolutely extreme as the one which has been supposed, yet appears, as I have already said,, to be one without the reason of the doctrine, and consequently without the doctrine itself. The despatch, used by the present appellant, was so unusual and considerable, that his counsel might well say he was almost on the point of making an apology for him.
Let us now attend to the dates of some of the transactions. William Ronald died 3d February, 1793 : administration was granted to the appellee 21st February, 1793. Andrew Ronald brought suit in Henrico county court 26th February, 1793, and the appellee confessed judgment therein 4th March, 1793. The appellant brought suit 28th February, 1793, and no notice was given by Bentley that he had taken out administration.
From this statement it appears, that Mayo, living in Henrico, sued his writ in Powhatan, (the county of the administrator’s residence,) within seven days after the administrator had there qualified. This was certainly as soon as he could reasonably be presumed to have heard of the event, and sent up for the purpose; and without further remarks, I en *544 tirely conclude that on a comparison of the appellant’s deswith that generally used by other creditors, no want of despatch, or diligence, can possibly be imputed to him.
On the other hand, how does the conduct of the appellee appear? He well knew the intestate to be very much indebted by judgment, bond and simple contract. He had not given notice by advertisement, (as is the general custom,) that he had taken the administration, and invited the creditors to come in. The omission to adopt this universal and just expedient, is a symptom from which we may argue the unfairness of his intentions. He goes into another county immediately after his qualification, and in five days from the date of his qualification, a writ is sued by a simple contract creditor, the intestate’s brother, a lawyer, and one who possibly conceived, as other lawyers now seem to do, that the letter of the law would bear him out in opposition to its reason and spirit, and in derogation of the guaranteed rights of others. On the 4th of March, judgment is confessed upon an open account, the items of which do not appear to have been canvassed, nor their justice established. Whether any, and what agreement, or concert, was made, between this creditor and the administrator, to induce him to take so hasty, novel and hazardous a step, is not in proof, and therefore, cannot be assumed as a ground on which to argue. But I can justly infer, that sagacious administrators in general, (in which description the present administrator seems to stand,) would not have ventured on such a measure without an indemnity.
But, without hazarding even this inference, I can safely infer that the conduct of the administrator, under all the above circumstances, does not appear to me to wear such an aspect, as to entitle him to the countenance of a court of equity. Especially if, as I think, the strict, (though substantial) law is against him; and, on these grounds, I must conclude that the decree of the chancellor, so far as it sustains the appellee’s claim for a credit of the assets covered by Andrew Ronald’s judgment, is erroneous.
*545 Fleming, Judge. The only point upon which the court have any difficulty is, Whether the administrator was justifiable in confessing judgment to Andrew Ronald for a debt due by simple contract only, when he had not notice of the claim of the appellant?
The facts are briefly these:
The intestate died on the 3d of February, 1793; and, upon the 21st of the same month, administration of his estate was granted to Bentley, by the county court of Powhatan, where he resided. On the 26th of February, Andrew Ronald, a simple contract creditor of the intestate, instituted a suit against the administrator. In the county court of Henrico ; and upon the 28th of the same month, Mayo, a bond creditor, issued his writ upon the bond, from the county court of Powhatan. On the 4th of March, Bentley confessed judgment to Ronald, for the amount of his account, Mayo's writ not having then been served upon him; that writ, however, being afterwards served, the plaintiff went on to obtain an office judgment; which was directed to be set aside, but, through the omission of the clerk, it was not done; and, therefore, it stood confirmed after the May term of Powhatan court. In consequence of this, the administrator, as there were not assets to satisfy both claims, obtained an injunction to that of Mayo, upon the ground of the clerk’s omission; and, at the final hearing, the high court of chancery established the priority of Ronald's judgment, as Bentley had not notice of the bond debt at the time when it was confessed. Mayo has appealed from the decision; and the question is whether the decree was right ?
It is generally agreed, that by natural justice and conscience, all debts are equal, and the debtor himself equally bound to satisfy them all. Therefore, in the administration of equitable assets, the court of chancery makes no difference among creditors, but all stand upon the same ground. In the administration of legal assets, however, the law having established an arbitrary preference in favour of creditors of certain grades who use due diligence in pursuit of their *546 claims, the court of equity follows the rule of law, and maintains the preference, provided the higher creditors do not suffer those by simple contract, to gain priority for want of notice to the executor of the preferable claims.
It becomes important, therefore, to enquire how far the law gives preference to the different grades of creditors.
Passing by the cases in the English books, concerning debts due to the crown, and those by recognizances and statutes, and considering those between citizens only, three sorts (after the funeral and testamentary expenses are paid) present themselves to our consideration, namely, debts upon record; those due by specialty; and those by simple contract.
Of these, judgments are to be first paid ; and, being matters of record, the administrator is bound to take notice of them at his peril, however distant the record from his residence. Therefore the appellee, in the present case, was under an obligation to satisfy in the first place the judgments against the intestate in his lifetime, before those obtained against himself; and to that extent he will be liable, Ronald’s judgment notwithstanding.
Specialty debts are the next in order:
Among these, the administrator, where there is a deficiency of assets, may select which he will pay, 1 Wins. 295; and, although suit may be brought upon one, before the day of payment of another has arrived, he may, taking care not' to plead any thing false in his own knowledge, protract the first suit, until the other specialty becomes payable, and then confess judgment to an action upon it, to the utter disappointment of the creditor in the first suit. 2 Chan. Cas. 201. This is the case with respect to Carrington’s judgment, which was confessed before Mayo’s office judgment was set aside, and therefore has priority to it.
But specialty creditors may lose their rank by supineness, and suffering those upon simple contract to obtain preference by greater diligence. For, if the executor has no notice of a specialty debt, he may pay, or confess judgment, to *547 creditors upon simple contract before it, Ambl. 162. Fitzgib. 76; and the notice must be by action too. 1 Mod. 175. But, in pleading the judgment confessed upon the simple contract, the executor must aver that it was done without notice of the specialty; for, otherwise, he would not have been excusable for confessing judgment to the inferior creditor. 1 Term Rep. 690.
This is the principle; and, if it be applied to the present case, its influence is irresistible. For the administrator, in pleading the judgment to Ronald, avers that he had not notice, at the time, of Mayo’s, or of any other debt of higher dignity; and there is no evidence that he had any such notice, either by action, or otherwise. Of course he stands excused. For there can be no fraud in doing what the law allows.
But it is said that he went out of his way to avoid notice; that he was sued and confessed judgment to Ronald, in the county of the latter, upon the very day on which the writ was returned ; that he did not advertize in the public newspapers that he had taken administration; and that, if this practice be allowed, executors may evade the law, to the prejudice of the higher creditors, when they please.
But all this appears to me to amount to nothing.
For, in the first place, there is no evidence that the administrator did go out of the way to avoid notice; and the court cannot infer it without testimony.
Neither is it proved, if the circumstance were material, that he went out of his county to be sued; but, for aught that appears to the contrary, he was about his lawful business. If, however, he had gone to the creditor’s county to be sued when he had no notice of superior claims, it would not have altered the case; for, as he might have paid without suit, the suit could not make his situation worse; and the law did not prescribe the county where it should be brought.
That the judgment was confessed on the return day of the writ, is a circumstance of no importance. For, as the *548 law gave the administrator a right to confess the action, without prescribing the period, it left it to him to judge of the time, and his opinion was conclusive. Besides it saved. costs, which he was under no obligation to incur.
His failure to publish in the newspapers that he had assumed the administration, is a matter of no kind of consequence. For I know of no obligation to give such notice; and, although it is sometimes done, it is for the convenience of the executor himself, and not of the creditors. Added to which, I believe that I may confidently affirm, that it is not done, in one case out of ten, throughout the state. Nor is it necessary upon principle. For his taking administration is an act of public notoriety; done in open court; and of which it behoves the creditors to take notice, and to use due diligence in securing their debts.
As to the observation that the conduct of the administrator tended to evade the law, to the prejudice of the bond creditors, it may be answered, that the administrator, as before observed, has done nothing but what the law allowed; and therefore that he stands justified by the law itself. For we are not at liberty to garble legal rules, and to use what makes in favour of one party, and reject that which is in favour of the other; but must take the whole together: And the same law which says, that the administrator shall not pay, or confess judgment to, a simple contract creditor when he has notice of a bond debt, says that, if he has not such notice, he may pay, or give judgment for, the inferior debt.
It was said, that Bentley, at the- time he confessed the judgment, had a perfect knowledge that the estate was very much embarrassed by debts of a higher dignity. But, if so, there is no proof of it in the record; and the court cannot assume the fact without evidence. Admit it to be true, however; and it will not alter the case, if the law required notice by suit.
It is difficult to define what is fraud in such cases. For the creditors have no lien on the effects, which belong to *549 the executor, who represents the person of the testator; but their right is to demand payment, to the extent of those effects, from the executor; who is bound to make it according to the rank of the creditors who apply. However, there must be an application; for it is not the duty of the executor to hunt after the creditors; but, of the latter, to make themselves known. And, if those of higher rank delay until the inferior debts are paid, they can no more complain than the general creditors can in the case of an heir, where the first judgment takes all the land; or in the case of a foreign attachment, where the more diligent creditors obtain the first judgments and exhaust the whole effects. For the maxim, in all such cases, is, that vigilantibus non dormientibus leges subveniunt.
There is no ground for the observation respecting the hardship of the case. For it is a mere scramble between the creditors; among whom, the law gave the race to the swiftest; and Ronald has been more prompt than Mayo.
But hardship cannot take away established rights: and some of the other cases, already mentioned, may occasionally be equally hard, and yet there is no redress. As where of several creditors of equal dignity the executor capriciously, or from favour, prefers the least meritorious; or where he retains the whole estate for his own debt, to the ruin of the widow and orphan, whose claims are of equal dignity, and greater merit.
Upon the whole, I think the administrator was justifiable, bylaw, in confessing the judgment to Ronald; and that it must take precedence to that of Mayo, subject, however, to an enquiry into the justice of the debt before a commissioner, according to the agreement between the parties.
Lyons, Judge. The only question, upon which the court differ, is, whether the administrator was justifiable in confessing judgment to Ronald a simple contract creditor, before notice of Mayo’s specialty ?
*550 That an administrator may do so, in general cases, seems to be admitted; but it is denied in the present instance, on account of the early period, at which it was done.
That circumstance, however, does not appear to me to be material. For the law has not prescribed the time, but merely says, that, if the administrator does, without notice, pay, or confess judgment to, the simple contract creditor, he may plead it against the specialty creditor, averring that he had not notice of the specialty, at the time.
There is nothing unjust in the rule thus qualified. For all debts are equal in conscience; and every creditor is at liberty to sue for his demand as soon as he pleases, without allowing the administrator time to enquire for other debts. On the other hand, the executor should at once, either controvert the claim by a plea which he believes to be true, or confess the action, without putting the estate to unnecessary costs in a hopeless defence. 3 Burr. 1369. 2 Black. Rep. 1275.
Therefore if one creditor, more diligent than the rest, drives him to this necessity, and thereby gains an advantage, the administrator who complies with his duty will be protected, and the creditor will be allowed the priority which he has obtained by his diligence.
For the specialty creditors, who are preferred upon no better ground than the solemnity of their claims, have priority upon condition that they are expeditious in the pursuit of them, before the assets are otherwise applied; and therefore they must be active, or they will lose it; because the administrator ought not to be exposed to danger by their supineness. For it is a universal principle, that he who possesses the knowledge and has the means of providing for his own safety, as well as for that of another person connected with it, ought not to stand mute, but should disclose the circumstances, or abide the consequences of his own neglect. Thus a prior incumbrancer, who suffers an innocent man to purchase the estate without notice of his claim, will be post *551 poned : and, in the same manner, as the creditor, and not the executor, knows of the bond and whether it is due or not, it devolves upon him to give notice of the claim, and not upon the executor to enquire after it. Otherwise the specialty creditor might commit a fraud upon the executor, by keeping the bond in his pocket, until all the assets were paid away, and then charging him with the debt. Fitzgib. 76. Bull. Nis. Pr. 178.
It follows, therefore, that if the administrator is sued upon a simple contract debt, he may, if he has no notice of a specialty, give way to the action, and plead it in bar to the specialty.
But the law goes further, and requires that the notice should be by suit. For notice, in pais, is not sufficient, whether it proceeds from other persons, or from the creditor himself. Not the first; because, as the specialty creditor has two remedies, one against the personal estate, the other against the real, it is uncertain which he may pursue; and therefore the administrator ought not to be bound to regard information from any other source than himself: Not the second; because the creditor may change his mind, and resort to the heir immediately; thus leaving the administration suspended, upon the possibility of a claim, against the personalty, which may never be asserted.
To put an end to this uncertainty, is one reason why the law authorizes the executor, when the specialty creditors do not think fit to assert their rights, by suit and notice of it, to pay, or confess judgment, to inferior creditors, for just debts. Which indeed is necessary, in order to ensure the safety of the executor. For a plea, that he had heard of a bond, but was not able to prove it, although he might have it in his power to do so at a future day, as the creditor might in due season give notice according to law, would not be endured ; because the simple contract creditor is under no obligation to wait for the convenience of him by bond; especially, when there is no evidence that the bond exists, or that the creditor means to pursue the personal estate. Un *552 less therefore the executor had power to deliver himself, by satisfying the simple contract creditor, before notice of the specialty, he would be placed between Scylla and Charybdis. For, on one hand, he would have to defend the suit under pain of a devastavit in not protecting the assets for the specialty creditor; and on the other, the attempt to defend it, by an insufficient plea, would subject him to the same penalty with the addition of increased costs. But all this is avoided by requiring the creditor to give notice by a suit; because that not only furnishes the executor with evidence of the existence of the bond by enabling him to crave oyer and spread it on the record ; but proves that the creditor means to pursue the personal estate.
The result is that unless the administrator has notice of a suit upon a specialty he may confess judgment to a simple contract creditor; and as there was no such notice in the present case, the preference, obtained by the simple contract creditor, must prevail.
But it was said, that, as Mayo’s writ is dated before the judgment was confessed, and issued from the court of the county where the administrator resided, the latter was affected with notice by the emanation of it. That however, is not so. For there must not only be a suit, but actual notice of it, to produce that effect. 11 Vin. 287. 1 Sid. 21. Freem. 54.
It was argued, though, upon the ground of fraud; and several positions were urged in support of it: none of which appear to me to be sustainable.
Thus it was said, that this was a vested right in the specialty creditor; and that the precipitate confession of the judgment for the simple contract debt, operated as a fraud upon his claim, as it deprived him of an opportunity of giving notice of it. But, to this, it may be answered,
1. That both creditors lived in the same county, and therefore one had the same opportunity of commencing his suit, in time, that the other had; and that Mayo, with greater diligence, might by a suit upon his bond, either in Powhatan *553 or Henrico, have interposed and prevented the judgment oo ... , , the simple contract debt.
That there is no such vested right in the specialty creditor s because his preference depends upon his timely progress; and therefore his priority is never established until notice of a suit. For the creditors have no interest in the subject; which belongs to the executor, who represents the person of the testator, and is bound, in that character, to pay it to the creditors, according to dignity, as they apply. Therefore, none have vested rights to aliquot shares in it; but all are at liberty to sue, and obtain judgments to bind it, if higher claims are not produced: and as each may sue as soon as he pleases, the most diligent must necessarily obtain preference, as their claims cannot, with propriety, be delayed by the executor. It resembles cases of qui tam; where every body may sue, but the most diligent appropriates the subject.
Again it was said, that the administrator did not publish in the newspapers, that he had qualified; and that this prevented the specialty creditor from knowing the fact so as to enable him to give the necessary notice. To which, the answer is, that the administrator was not bound, by law, to make such publication; and as the letters of administration were granted in open court, and were matter of record, the specialty creditor had the same opportunity of knowing the fact that the simple contract creditor had, and was under the same obligation to take notice of it.
It was also said, that the intestate was generally known to be greatly indebted, and that Bentley had a perfect knowledge that there were higher claims, which it was fraudulent in him to disappoint by a precipitate judgment. To this I answer, that, if the intelligence with regard to the intestate’s affairs was so general, it only proves that there was reason for greater despatch in the creditors. For the particular debts of no man are universally known. An opinion may prevail that his circumstances are embarrassed, but, whether by bond or simple contract, none can tell, except the cre *554 ditors and the debtor; and therefore, if the rumour had • Bentley, it would not have affected him; for he, like others, would have been ignorant of the persons and grades of the claimants, unless the creditors gave him information. However, there is no proof, in the record, of such general intelligence; and much less, that the administrator had a perfect knowledge that there were higher claims : and the court will not presume it, for the sake of affecting him with fraud, if that would constitute fraud. But what is decisive is, that, if he had had such knowledge, it would not have been important, unless he had received notice of Mayo’s suit.
It was likewise urged, that the administrator intended to give preference to the simple contract creditor, who was the brother of the intestate; and that this was fraudulent, with regard to the specialty creditor. But there is no proof of such intended preference. For it stands upon the record as the common case of a suit by a simple contract creditor against an administrator, having assets at the time to satisfy it, and ignorant of any higher claim. He was, therefore, under no obligation to delay the creditor, upon pretence that there might be claims of higher dignity; for the law does not require him, in any case, to procrastinate payment by dilatory means, 1 Sid. 404. 11 Vin. 269, pl. 5; and he may even be compelled to prompt pleading, in order to prevent preference to others. 11 Vin. 269. 1 Bulstr. 122. If, however, a preference had been intended, it would not have been fraudulent. For, to pay or give judgment to a simple contract creditor when there is a bond unsatisfied, is, at most, a devastavit; which may proceed from very honourable motives, as the merit of the creditor and a miscalculation of the assets; and therefore the law does not condemn it as a fraud, but considers it as a tort only, even where the executor knows of the bond. The argument though, is a fortiori, when the notice which the law requires, has not been given; because it is impossible for a man to commit a fraud in doing what the law permits to be done, at his own discre *555 tion. Therefore, as the law allowed the administrator to confess judgment to the simple contract creditor, when he had no notice of the specialty, it is no cause of censure that he did it. For, if it be wrong, the law was to blame in conferring the authority, and not the administrator in exercising it. Accordingly, where the law allows the confession, from whatever motive it may have proceeded, the judgment cannot be impeached j and, therefore, it has been held, that “ if a recovery be had against an executor upon covin, but for a good cause, a creditor cannot avoid the recovery by saying that it was by covin to defraud him; for the party had a good cause, and where the recovery is had upon a legal cause, it cannot be called covinous, although it was by consent, and to the intent to prevent another from obtaining payment of his debt.” Jo. 92, pl. 5. Hence it is, that in debts of equal dignity, the executor, as before observed, may, by imparlance and dilatory pleas, provided they be true, gain time, for the avowed purpose of enabling the creditor of less merit to bring suit and obtain preference of him that has greater. For, although it may be unconscientious in the executor to do so, yet the law, which allows the proceeding, will maintain it.
Upon the whole, I am of opinion, that the administrator was justifiable in confessing judgment to Ronald, as he had not notice of Mayors suit, at the time.
Pendleton, President, This is a case commenced originally at law, and there properly determinable; the question being, Whether an administrator has committed a devastavit in applying his assets to the payment of a simple contract debt, after a suit commenced on a specialty? A question probably, in this instance, for the first time decided in a court of equity, except where a creditor sues there for a discovery of assets, or it is necessary for that court to enforce its decree.
The ground of application to that court, in this case, is of a slender nature indeed. An office judgment had been *556 regularly obtained at law, which might have been set aside, at the succeeding May term, upon motion to the court, and pleading to issue immediately. Was the administrator or his attorney, which is the same thing, in no fault that this was not done ? He gave a memorandum to the clerk, instead of applying to the court, who were to judge, whether it was a proper plea, under the act of assembly. It was his duty to attend to the public reading of the minutes, when the omission would have been discovered, as on other occasions. I have been told that a party can’t be relieved in equity upon a ground on which he might have defended himself at law, but neglected it: and I recollect a case where a judgment was reversed with costs, for a miscalculation of the clerk in the sum recovered, on the ground that it was the duty of the parties to attend to the reading of the orders, and have mistakes corrected. I thought it a mere misprision of the clerk, and amendable, but was overruled.
But however slender this equity may appear on the above statement, I think the chancellor was right in directing the pleas to be received. On this principle, that wherever a party has been deprived of a fair defence at law by- mistake or accident, and can have no relief at law, a court of equity ought to let him into that defence, as it will to a new trial, where the merits have not been fairly tried, and a court of law cannot award it. But I firmly insist that, having directed the pleas to he admitted, chancery had exercised its whole power over the cause, which was to proceed wholly at law; and it eyred in directing the verdict to be certified to that court. I am aware of the decision of Wilson v. Rucker, 1 Call, 500, in the case of a new trial, which stands on the same ground; by which I am bound, and shall make this no part of the ground of my present judgment. But I shall take this, and every other opportunity .of entering my protest against that decision, in hope that it may one day be reviewed by a full court, and changed before it is established as a precedent, since it was the opinion of a bare majority, and appears to me as tending to draw every law *557 case, even battery, slander, and all kinds of torts, into a final chancery decision.
The administrator is therefore to be availed of every fair and legal application of his assets to May 17th, 1793; but has no right to consider the judgment as open to let in subsequent judgments even for debts of equal dignity, much less those of inferior grade; and therefore those of Chancellor H. Saunders, Samuel H. Saunders, Jeffry Davis, Peter Saunders and Robert C. Harrison, are to be deducted from the allowances made the administrator in the commissioner’s report; which judgments being disallowed, there remains £ 601. 18. overpaid of the assets. This makes it necessary to consider the other articles, in that report, objected to by the appellant’s counsel. None of which, without going over particulars, appear to me to be exceptionable, except Andrew Ronald’s judgment: which I think cannot be sustained against Mayo’s debt by specialty, upon any principle of law, equity, or justice.
The law has fixed the various grades of dignity among the debts due from an intestate. According to which order, the administrator is bound to pay them at the peril of what is called a devastavit, and he is bound to pay, a creditor of superior dignity postponed, out of his own estate, if his assets fail; and this, to use an expression of the counsel, every sage of law on the subject invariably proves; and further, in strict law, if an administrator pleads to an action, without stating his assets, this will be an admission of assets and charge him, although not come to his hands. Courts of equity consider all debts equal in conscience, and distribute equitable assets rateably among all; but with legal assets there is no instance of that court’s interference with either rule of law before stated.
Justice requires the chancery principle, an equal distribution of the assets. This, however, is not effected by the present contrivance; but an inferior creditor is paid his whole debt, instead of a superior one preferred by law, and having equal equity.
*558 Law and equity acting on the same principle in the apof legal assets, why were we told that we were to decide it as a question of strict law, unless the gentleman, impressed with the idea of apparent fraud in the confession of this judgment, was apprehensive that equity, adhering to its own principles, would not aid even the appearance of that odious act ? However, his position is not correct, if my idea of propriety had been pursued, and the case left to proceed at law after directing the pleas to be received, then indeed equity would have had no further to do with the cause j but the gentleman did not, nor could he prove, that the court of equity, making a final decree on the merits, was not to regard its own principles, as well as the law.
Two of those principles appear to me opposed to the decree, 1. That, as to these two contending creditors, Mayo has a preference by law and equal equity with Ronald, and is therefore to prevail. 2. That, in endeavouring to change this legal preference, the administrator was guilty of a fraud, and entitled to no countenance, or protection, in a court of equity.
But to consider it upon strict law, premising that fraud is cognizable and is as influential at law as in equity, to avoid what is done by it.
The law, having fixed the preference of debts, proceeds to a detail of the duty and rights of the administrator. This duty is to pay all debts of record, without other notice ; and, as a discovery of them will require some time, that circumstance would seem to forbid so hasty a confession of judgment, to inferior creditors, as happened in this case. He is to collect the estate together and have it appraised, and satisfy himself of the amount of his assets; a work of time. It is the practice to call on creditors to produce their claims, that the administrator may act with safety and propriety in the application of his assets, and the legal order be observed. But we are told that no law requires this to be done; and it is true, that there is no express statute for the purpose, yet such is the practice, and very *559 reasonable in this country, where the dealings of men are so extensive, and when the administrator has sworn that he will administer the estate according to law, and when that law requires him to pay debts in a prescribed order of priority at the peril of a devastavit; the advertisement appears to be dictated by religion and a regard to his own safety, and required not a positive law to direct it. At least it leaves the administrator without excuse for his transgression of the legal order, by the hasty confession of judgment to a simple contract creditor, under pretence of no notice of Mayo’s specialty. This further observation occurs, that where men deviate from the common course of proceeding, it ever creates a suspicion of a fraudulent, or evasive, intention.
The administrator’s rights upon this subject are, to retain, for himself, against all creditors of equal dignity; and of other equals, to prefer which he pleases, with this exception, that being sued by one, he can’t postpone him by a voluntary payment to another, but may delay the suitor by due means, give judgments to others, and plead those in bar j and, where he has this right of preference, he is the sole judge of the influential motives in its exercise.
But no such right exists in him to give a preference to an inferior, against a superior creditor, either openly or covertly. Nor can he be justified in the attempt, by the rational protection afforded to an actual payment of such a debt, without notice of the superior, in a fair and ordinary administration.
But here the strict law is applied. The administrator is not obliged to give notice even of his own appointment; nor has the law fixed a time for the' administrator to wait for superior creditors to give notice of their debts, before he pays inferior ones j not a year, a month, a week, or a day; but all is left to the discretion of the administrator. If this be strict law, vain indeed is the provision for establishing a preference in debts, and a penalty on the administrator for not observing it, since an administrator might have at his *560 elbow, a simple contract creditor, ready with his writ and declaration,- and give him a judgment, the moment he is qualified, to swallow up his assets in prejudice of specialty creditors; and so repeal the law by his authority, which the court of chancery has repeatedly said not to be within its own power in the case of legal assets, although different from its rule in distributing equitable assets.
Is there any instance in which strict law will suffer its rules and provisions to be eluded by such barefaced subterfuge ? The law does not condemn the diligence of a creditor to gain, nor the aid of an administrator to give him a preference to all others of equal dignity: But, where such speed is used for the purpose of defeating a superior creditor of his legal preference, who has used common and reasonable diligence to make known and claim his right, it will, as to him, be considered as a fraud, and will not prevail: and this distinction appears to me to be not only rational, but established by the books in a collective view.
That an administrator, paying a simple contract creditor without notice of a specialty, shall be protected, is laid down as a general principle uncontradicted. But surely the rule itself, placing it on the point of notice, implies that the specialty creditor must be allowed time and opportunity to give the notice, in order to preserve his preference : and accordingly, in 1 Mod. 174, where chief justice Vaughan lays down the rule, he says the executor shall be protected in paying a simple contract creditor, against a specialty creditor, unless he had timely notice of the specialty; and this notice must be by action : and is not that the present case precisely ? It is so, unless we decide, that issuing a writ, in seven days after an administration, in the county where it was granted and the administrator lived, was not timely notice by action. As to the service of the writ, the time of which is not fixed, I hold it immaterial, since it don’t appear to have been intentionally concealed, but duly executed and returned: and, if personal notice is not sufficient without action, it would seem to follow, that the commencement of *561 the action is sufficient without personal notice; but here the action was commepced before Ronald’s judgment was obtained ; and therefore it is strict law against strict law.
Again, in Fitzgib. 76, chief justice Eyre mentions the rule of protection, and gives the reason for it to be, that otherwise a specialty creditor might ruin the executor by keeping his bond in his pocket, until all the assets should be recovered upon simple contracts; and that there is no inconvenience in obliging the specialty creditor to give the executor notice of his bond. Plainly shewing that the specialty creditor must be in some fault in giving notice before he is to lose his preference: of which I can’t say an atom appears in Mayo ; but, on the contrary, he has used timely and legal diligence. And what is the conduct of the administrator which is to protect him in a court of equity ? Five days after his administration, he is found in another county, for there a writ is taken out against him, and served, at the suit of Mr. Ronald a simple contract creditor; and six days afterwards, (i. e. 4th March,) he confesses judgment, probably staying in that county for the purpose, lest returning into his own county, a writ might be served for some specialty creditor, before the March Henrico court, and disappoint the purpose of defeating the law. Is it possible that any administrator in his senses, and especially one of Mr. Bentley’s information, could take this trouble, at the risk of paying this large sum of money out of his own pocket? I think not: and I have no doubt, but he is indemnified, and that it is an experiment to give the brother the only chance he had of getting his debt. It gave him a preference to all other simple contract creditors, for so far the administrator had a legal right to prefer him, but could not postpone a specialty creditor, who had used legal and timely diligence.
Upon this point, however, the court are divided; and the decree so far stands, leaving a balance of £ 601. 18. due to the administrator. Yet the decree is erroneous in directing a perpetual injunction, instead of permitting the judgment to be levied of future assets, if any, beyond the sum over *562 paid by the administrator, as may be the case. It is remarkable, that only £ 18 is credited as received for outstanding debts. Is it possible that this gentleman, so considerable a dealer as to have his whole personal estate swept away in two or three months to pay his debts to the amount of near £ 6000, should yet have only £ 18 due to him ? It is rather probable that his debts were considerable : at any rate, the decree should have left the judgment open to- operate upon any future assets. To charge the creditor with costs, who had been guilty of no fault, and was to lose his debt by the management of the administrator, would be an unusual severity. The whole court concur that the decree is wrong in the instances last enumerated. It is therefore reversed, and the following is to be the entry:
“ The court is of opinion, that there is error in so much of the decree of the said high court of chancery as allows a credit to the appellee, in his account of administration, for the judgments obtained by Chancellor H. Saunders, Samuel H. Saunders, Jeffry Davis, Peter Saunders, and Robert C. Harrison, amounting together to £414. 17. 11.; for none of which he ought to be allowed against the appellant’s demand, the judgments being entered posterior to that of the appellant, and some of them upon simple contracts only. That the judges of this court being equally divided upon the question whether the judgment obtained by Andrew Ronald is not in the like predicament, the same, pursuant to the act of assembly, is to stand as allowed by the said high court of chancery, provided the justice of that debt shall be established, which the appellant is to be at liberty to have enquired into before a commissioner, according to the agreement of the parties. This judgment, if established, will leave a balance of £601. 18. overpaid by the administrator of his assets; and therefore that the injunction ought to stand, at present, against the appellant’s judgment; but that there is also error in the said decree in awarding a perpetual injunction to the said judgment, instead of permitting the appellant to proceed thereon, upon *563 future assets, if any accrue, beyond the said balance of ¿6 601. 18.; and that there is also error in awarding the appellant to pay costs. Therefore it is decreed and ordered, that the decree aforesaid be reversed and annulled, and that the appellee pay to the appellant his costs, by him expended in the prosecution of his appeal aforesaid here ; and this court proceeding to make such decree as the said high court of chancery ought to have made; it is further decreed and ordered, that, in case the justice of the said Andrew Ronald’s debt shall be established as aforesaid, the appellant be perpetually injoined from levying executions upon his said judgments at law, except of assets, which have or shall come to the hands of the, administrator, beyond those accounted for in the account made up by the commissioner of the said high court of chancery, and over and above the said sum of £ 601. 18., which he is allowed to retain out of such future assets; but if the debt of the said Andrew Ronald shall, upon enquiry, be wholly or in part rejected, that the decree be moulded so as to St the event, according to the principles of this decree : and that the parties bear their own costs in the said court.”