# CIRCUIT COURT OF THE CITY OF HOPEWELL

Sandra L. Hill

v.

Nattile A. Clarke et al.

August 16, 2006

Case No. CL06-18

BY JUDGE W. ALLAN SHARRETT

This matter comes before the Court on Petitioner's claims regarding the Estate of Mr. James R. Hill. After analysis of the facts, statutes, and case law regarding claims against estates and executor's duties, the Court rules in favor of Petitioner Hill.

*Facts*

James Hill ("Decedent") died on August 3, 2005. (Pet'r Post Hr'g Mem. 1, April 24, 2006.) The will was admitted to probate, and Respondent Nattile Clarke, the decedent's daughter, became the executor of his Estate on September 8, 2005. (Pet'r Mem. 1.) The decedent's wife, Mrs. Sandra Hill, Petitioner, filed an Election of Family Allowance and Exempt Property and Claim to an Elective Share on November 21, 2005, pursuant to Virginia Code § 64.1-1-13. (Pet'r Mem. 1.) Respondent Clarke mailed Petitioner a copy of Account for Decedent's Estate, declaring the disbursements for debts and expenses, totaling $12,284.55, but did not include an itemized list of

disbursements. (Pet'r Mem. 1.) Petitioner filed these proceedings under Virginia Code § 64.1-154.4, because Respondent Clarke had paid other debts of the estate before allocating for the family allowance and exempt property claimed by Petitioner. (Pet'r Mem. 1.)

Respondent Clarke stated that, when she became executor, the total amount of the assets was $17,840.30, which consisted of proceeds from the sale of a vehicle for $15,000.00, the amount in the savings account, $1,761.33; and insurance proceeds, $1,078.97. (Pet'r Mem. 1.) Also in dispute is a check from the Virginia Farm Bureau for the amount of $1,900.00. (Pet'r Mem. 1.) Respondent claims that currently the Estate has a total of $5,538.75 in the account. (Pet'r Mem. 1.) Additionally, Respondent claims $4,250.00 in legal fees incurred as a result of these proceedings, $1,020.00 for out-of-pocket expenses, and an Executor's fee of $600.00. (Pet'r Mem. 1.) The car in question was transferred to Respondent Clarke's name in November of 2005 and sold on January 3, 2006, for $15,000.00 to Respondent Clarke's grandfather; therefore, according to Respondent Clarke, the amount of money received from the sale of the vehicle is not included in the Estate. (Pet'r Mem. 1.) Respondent Clarke also petitioned the Court for relief and guidance in the further execution of Decedent's estate. (Resp't Clarke Post Hr'g Mem. 2, April 25, 2006.)

There is an additional Respondent in this cause, Western Surety, which issued a bond on September 8, 2005, when Ms. Clarke became the Executor. (Resp't Surety Post Hr'g Mem. 5, April 25, 2006.) The amount of the bond was $22,700. (Rep't Mem. 5.) Petitioner has asserted a claim against Respondent Surety to cover the difference in amount of the estate and amount requested, $12,301.55. (Rep't Mem. 5.) Western Surety claims that Petitioner's claim is premature and that this matter is not ripe for review under the statutory periods required by Virginia Code. (Rep't Mem. 3.) Respondent Surety also claims that Petitioner has interfered with the administration of the Estate and that the claims filed by the Petitioner are in excess of what Virginia statute permits. (Rep't Mem. 6-9.)

## Issues

1. Is this matter ripe for review by this Court?

2. Is Petitioner entitled to the family allowance and exempt property provisions, which should be paid before other debts are paid by the Estate?

3. Is Western Surety liable to the Petitioner for funds which would normally have been paid by the Estate, but because the Estate is now insolvent, the bond must pay the difference to which the Petitioner is entitled?

*Analysis*

(1) *Ripeness*

Respondent, Western Surety, claims that this matter is not mature and should not yet be submitted for the Court's review. (Resp't Surety Post Hr'g Mem. 3, April 25, 2006.) Virginia Code § 26-12 requires that a personal representative of the estate, in this case, Respondent Clarke:

> shall, within four months after the date of the order conferring his authority, return to the commissioner of accounts an inventory of all the personal estate under his supervision and control, the decedent's interest in any multiple party account in any financial institution, all real estate over which he has the power of sale, and any other real estate that is an asset of the decedent's estate, whether or not situated in the Commonwealth.

Va. Code Ann. § 26-12 (2006). Then, the Commissioner must inspect the inventory, ensure it is in the proper form, approve it, and within ten days of receipt, deliver it to the clerk of the court. Va. Code. Ann. § 26-14 (2006). There is no dispute that Respondent Clarke filed an inventory on January 2, 2006, within four months of becoming the Executor. (Resp't Surety Post Hr'g Mem. 3, April 25, 2006.) Before the inventory was approved by the Commissioner, this suit was filed on January 24, 2006. (Resp't Surety 3.) The Surety claims that the Commissioner did not have time to approve the inventory, because it was waiting for direction from the Court. However, it appears that the Commissioner received the inventory around the first week of January, and had time to begin review, within the ten-day review period, before this lawsuit was initiated.

Additionally, the Surety claims, a proper accounting of the Estate is not due until sixteen months after Clarke became Executor, therefore making this case premature for deliberation, as that statutory period has not yet run. *See* Va. Code. Ann. § 26-17.5 (2006) ("Within sixteen months from the date of the qualification, personal representatives shall exhibit before the commissioner of accounts a statement of all money and other property which such fiduciary has received, or become chargeable with, or has disbursed within twelve months from the date of qualification.") The purpose of the Commissioner and inventory review is to prevent any extreme injustice to a beneficiary because an inventory will "show the character, amount, and value of the property transmitted." *Commonwealth v. Carter*, 126 Va. 469, 487, 102

S.E. 58, 64 (1920). It is a valid argument that the statutory periods have not yet run; however, case law does not prohibit suits from being initiated during the administration period, and the Code specifically states that "election to take family allowance, exempt property, and homestead allowance, or any of them, may be *made within one year* from the death of the testator or intestate." Va. Code Ann. § 64.1-151.5 (2006) (emphasis added). Prohibiting review of this matter would preclude Petitioner from collecting on any claim she may have, which is not an equitable solution to this matter and which renders the accounting, family allowance, and elective share statutes in hopeless conflict. The claims of the Petitioner are, therefore, ripe for litigation.

(2) *Family Allowance and Exempt Property*

The Code of Virginia is very clear about the order of distribution by an executor of an estate. Section 64.1-151.1 permits a surviving spouse to receive a family allowance disbursement, up to $18,000, which is a reasonable allowance of money out of the estate for "maintenance during the period of administration." Va. Code Ann. § 64.1-151.1 (2006). It states that "if there are no minor children, the allowance is payable to the surviving spouse" and "[t]he family allowance has priority over all claims against the estate." *Id.* Respondent Clarke claims that a family allowance is inappropriate in this matter because there are no children from this marriage and Ms. Hill does not need the money. (Resp't Clarke Post. Hr'g Mem. 3-4, April 25, 2006.) The statute requires neither that necessitous circumstances be demonstrated, nor that minor children be involved. *See In re Estate of Brown*, 8 Va. Cir. 123, 125 (Culpeper County 1985) ("a surviving spouse is entitled to a family allowance even if the decedent left no dependent minor child.") However, an allowance must be "reasonable," and the Court must make a determination as to what is "reasonable," if it cannot be agreed upon. *See Landram v. Sullivan*, 29 Va. Cir. 190, 193 (Spotsylvania County 1992).

The Petitioner is correct in her assertion that the family allowance is to be paid out *only after* costs and expenses of administration. Va. Code Ann. § 64.1-157 (2006) (emphasis added). However, after the costs and expenses of administration, which are addressed below, the family allowance is the first amount which must be distributed, followed by the exempt property allowance. *Id.* The exempt property allowance allows for a claim of $15,000 to be made by the surviving spouse. Va. Code Ann. § 64.1-151.2 (2006).

The definition of "costs and expenses of administration" is not clearly statutorily defined, nor is it asserted clearly in the briefs submitted by the parties. The Decedent provided in his will that "[a]ll death taxes . . . be paid

and charged as a cost of administration of the estate." Last Will and Testament of James R. Hill, Art. I. However, no further provisions were included specifically for the expense of administration. Western Surety claims that administrative costs include "funeral and burial expenses, as specified by the decedent in his will"; however, the will does not specifically state, as it did with regards to the death taxes, that they were to be part of the administration of the estate. The statute provides for payment of funeral expenses *after* the family allowance and exempt property provisions. Va. Code Ann. § 64.1-157 (2006) (emphasis added). In this situation, it is most reasonable to allow *only* the payment of death taxes and other costs of administration, not including funeral expenses, before the family allowance and exempt property payments. The other costs of administration that should be paid, if they have not already been paid, are legal fees (not including fees resulting from this action), bond premiums, executor fee, and any other proven costs which fall under the purview of administration of the estate and which are not in conflict with the statutorily prescribed order.

## (3) Breach of Duty by Executor and Duty of Western Surety

Respondent Clarke claims that the estate would not be able to pay the requested amount submitted by Petitioner, $19,740.30, because all that remains after several other payments is $5,538.75. It is clear that Respondent Clarke violated her duties as Executor of Mr. Hill's estate because she did not disperse amounts owed by the estate in the proper order, in breach of her duty as Executor. *See Mayo v. Bentley*, 8 Va. (4 Call) 528 (1800) (the duty of a personal representative is "to pay the debts of the decedent in the order of priority as prescribed by law, and if he pays an inferior debt, leaving a debt of a preferred claim unpaid, the payment constitutes a devastavit in case of a deficiency of assets"). Respondent Clarke claims she cannot pay the Petitioner, as other debts totaling over $12,000 have been paid; however, no valid accounting for these payments has been produced. Because Respondent Clarke did not disperse the amounts owed in proper order, the conditions of the fiduciary bond have been breached, and Respondent Western Surety must pay the difference owed. (Pet'r Mem. 3.)

## Conclusion

The Court concludes by noting that Respondent Clarke has breached her duty as Executor by failing to provide any proof of debts of the Estate and

by paying these unknown debts out of order of priority as set by statute. The Virginia Code is very clear about the order of distribution by an Executor of an estate. See Va. Code § 64.1-157.

Further, regarding the sale of the Pontiac Trans Am, it is clear that Respondent Clarke transferred the car to her name and then sold it to her grandfather for $15,000. Respondent Clarke claimed she needed the money from the car to pay for debts of the estate; and the proceeds from the sale of the car are part of the Estate. Because certain debts were apparently paid out of the statutorily directed order, they are considered unauthorized payments, and, therefore, the Court considers those amounts to still be available.

Likewise, the Farm Bureau check presently held by Petitioner Hill is a part of the Estate, and should be delivered by Ms. Hill to the Executor.

Petitioner Hill is statutorily entitled to both the family allowance and exempt property allowance; however, the amounts awarded are within the Court's discretion. The Court considers this marriage to be one of short duration with no children and finds Ms. Hill to be gainfully employed and far from destitute. Petitioner Hill has not demonstrated necessitous circumstances, but is statutorily entitled to the family allowance and exempt property, which do not require demonstration of need. Exercising its discretion, the Court sets the family allowance awarded to Petitioner Hill at $4,935.08 and the exempt property amount awarded at $4,935.07, for a total of $9,870.15. This amount shall be satisfied by immediate payment from Executor to Petitioner of a check drawn from the estate account. As for Petitioner's request for Elective Share of the Estate, because this was not included as part of Petitioner's original petition, the Court will not decide this issue at this time.

To the extent the Estate is unable to satisfy payment of this amount, Respondent Western Surety must pay, due to Respondent Clarke's breach of duty as Executor.

Prior to receiving payment, Petitioner Hill shall deliver the Farm Bureau check of $1,900.00 to the Executor, who shall deposit it immediately into the Estate account.

Considering the totality of the circumstances of this case, the Court orders that Respondent Clarke receive no compensation for her service to date as Executor and that neither Clarke nor Western Surety shall receive attorney's fees, costs, or expenses.

Finally, Executor/Respondent Clarke shall complete all duties as Executor as required by law.