TILLER, TREASURER, V. EXCELSIOR COAL AND LUMBER COR-
PORATION.

September 9, 1909.

1. TAXATION—*Delinquent Taxes—Sale of One Tract for Taxes on An-
other.*—It is not permissible for a treasurer to sell the mineral
lands of an owner, which are not delinquent, to pay delinquent
taxes on other lands held in fee by the same owner.

2. EQUITY—*Injunction Against Illegal Tax—Complete Relief.*—The
jurisdiction of a court of equity to enjoin the collection of an
illegal tax is well settled in this State, and, having acquired
jurisdiction for this purpose, it is proper for the court to settle
fully the rights of the parties with respect to the entire subject
matter of the litigation.

3. TAXATION—*Date of Assessment of Lands—February 1—Construc-
tion of Statutes.*—The revenue system of the State must be con-
sidered as a whole, and the various sections of the statutes which
are *in pari materia* must be read together in order to ascertain
their true meaning and intent. So reading chapter 24 of the
Code, it appears that the beginning of the tax year for the assess-
ment of taxes on real estate is February 1, and that the person
who owns land on that date is the one to whom the land is to be
assessed for taxes for the year thence next ensuing.

Appeal from a decree of the Circuit Court of Dickenson
county. Decree for complainants. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Ira Vanover* and *Roland E. Chase,* for the appellant.

*Finney & Wilson,* for the appellee.

Whittle, J., delivered the opinion of the court.

On January 1, 1906, the appellee, the Excelsior Coal and Lumber Corporation, owned 14,344 acres of land in fee, and 9,050 acres of coal and mineral, in Dickenson county, Virginia. The commissioner of the revenue assessed the appellee with taxes on the first-named tract, and also on 6,316 acres of coal and mineral, instead of 9,050 acres, the correct acreage owned by the corporation, for the year 1906.

On July 16, 1907, the appellee obtained from the Circuit Court of Dickenson county orders exonerating it from payment of taxes and levies for the year 1906 on 6,851 acres of land in fee, being part of the 14,344 acres; and on March 17, 1908, it was exonerated from all taxes and levies assessed upon the 14,344 acres in fee for the year 1906, it appearing that it had sold and conveyed the land to the Yellow Popular Lumber Company on January 5 of that year. The appellant refused to respect the orders of March 17, 1908, on the ground that the circuit court had exhausted its jurisdiction under the statute after making the exonerating orders of July 16, 1907, and that the subsequent orders were, therefore, void.

The treasurer was proceeding to advertise appellee's mineral land for sale for delinquent taxes for the year 1906, on the land in fee, when enjoined by an order of the circuit court.

At the final hearing, the court held the assessment of taxes for 1906 on the land in fee against the appellee illegal, as it was not the owner thereof on February 1, and, having corrected the discrepancy in acreage of the coal and mineral land, perpetuated the injunction with costs.

Independently of the question of the validity of the exonerating orders of March 17, 1908, with respect to which we express no opinion, it was clearly not permissible for the treasurer to sell appellee's mineral lands, which were not delinquent, for delinquent taxes on the 14,344 acres in fee.

The Virginia Code, 1904, section 437a, provides that where the surface of land is held by one person and the minerals by another, the commissioner shall ascertain the fair market value of their respective interests. In other words, the two holdings are made distinct and separate subjects of taxation.

The jurisdiction of a court of equity to enjoin the collection of an illegal tax is well recognized in this State (*Town of Wytheville* v. *Johnson,* 108 Va. 589, 62 S. E. 328, 18 L. R. A. (N. S.) 960), and it was proper for the circuit court, after having acquired jurisdiction of the case, to settle fully the rights of the parties with respect to the entire subject matter of the litigation.

We are also of opinion that the circuit court did not err in holding that the assessment of taxes against the appellee for the year 1906, upon the 14,344 acres of land in fee, was unlawful, for the reason that it did not own the land in fee on the first day of February of that year.

By Act of the General Assembly, approved April 16, 1903 (Acts 1902-3-4, p. 155), it is declared: "That the taxes on persons, property and incomes for the year commencing the first day of February, 1903, and each year thereafter, and on licenses to transact business, shall be as follows: . . ."

So, also, section 455 of the Code provides that: "The commissioner for each district . . . shall commence, annually, on the first day of February, or at such time as the auditor shall designate, and proceed without delay to ascertain all the real estate in his district . . . and the person to whom the same is chargeable with taxes on that day."

This regulation with regard to the beginning of the tax year has long been incorporated in the statute law of this Commonwealth. Thus, the act approved March 16, 1874 (Acts 1874-5, p. 215), making general provision for the assessment of taxes, prescribes that such taxes shall be assessed for the year beginning the first day of February.

Our attention has been called to section 459 and 461 of the Code, the former requiring the clerk of every circuit and city court, annually, on or before the fifteenth day of January, to make out a list of all deeds for the partition or conveyance of land  .  .  .  which have been admitted to record in the clerk's office of such court within a year ending on December 31, next preceding; and the latter directing such list to be sent to the Auditor and a copy to be delivered to the commissioner.

It is said that section 455 could not have intended to devolve upon the commissioner the duty, in the meantime, of searching the records for conveyances and grants made between January 1 and February 1; and, consequently, that land so conveyed and granted would escape taxation for that year altogether.

It is true the conveyance from the Excelsior Coal and Lumber Corporation in this case would not appear in the list of January 15, 1906, but in the list for the following year; and that it might not be practicable for the commissioner to make search for conveyances and grants made between the dates mentioned. Yet it does not follow from those circumstances that the land would escape taxation for the year in question. On the contrary, that result would not follow when sections 455, 458, 459, 461 and 470, which are *in pari materia,* are read together.

Section 455 makes it the duty of the commissioner to ascertain the real estate in his district and the person to whom the same is chargeable with taxes on February 1 of each year; and, in the discharge of that duty, he is directed by section 458, when taking the list of personal property (as prescribed by section 490), to carry with him the last land book; and the entry of lands charged to any person resident, or having an agent within his district, shall be shown to such person or his agent, who shall state on oath whether the same be correctly

entered, whether any part thereof ought to be transferred to· any other person, and, if so, to whom, and the nature of the evidence to authorize such transfer. The commissioner, upon. obtaining such information, shall verify the same by the records, and, if found correct, he shall change the entries on his land book accordingly. This section, if complied with, prevents the· ill consequences suggested, and makes the owner of land on February 1, which has been conveyed between the end of the calendar year and the beginning of the tax year, answerable· for the tax.

Sections 459 and 461, as we have seen, deal with the duty of clerks to make out annually lists of deeds, and to transmit such lists to the auditor and deliver copies to the commissioners,. who are required to make the transfers on the land books contemplated by section 470.

The revenue system must be considered as a whole, and our· interpretation of the foregoing sections of chapter 24 of the Code· has obtained in the auditor's office for many years; and, as was said in *Pardee* v. *Commonwealth,* 102 Va. 905, 908, 47 S. E. 1010, 1011, "a departure from that rule can only result in· confusion and inconvenience."

For these reasons we are of opinion that the decree appealed from is right and should be affirmed.

*Affirmed.*