# Richmond.

## COMMONWEALTH OF VIRGINIA AND OTHERS V. CARTER, EXECUTRIX AND OTHERS.

### January 22, 1920.

1. TAXATION—*Injunction—Adequate Remedy at Law—Acts 1916, p. 89.*—Before the enactment of the act of February 24, 1916 (Acts 1916, p. 89), the taxpayer who felt aggrieved by the assessment of his property for taxation, at his election, could either institute his suit in equity to enjoin the collection of the tax or proceed by motion under Code of 1904, sections 567, 573, inclusive (Code of 1919, secs. 2385, *et seq.*) This jurisdiction has been long established in this State.

2. SUCCESSION TAXES—*Injunction—Adequate Remedy at Law.*— The act of February 24, 1916 (Acts 1916, p. 89), provides that "no suit for the purpose of restraining the assessment or collection of any tax, State or local, shall be maintained in any court of this Commonwealth, except when the party has no adequate remedy at law."

   *Held:* That this act does not forbid the institution of a suit in equity by one complaining of the assessment of inheritance taxes under section 44 of the tax bill, as amended March 22, 1916 (Acts 1916, p. 812), as sections 567-573, inclusive, of Code of 1904 (Code of 1919, secs. 2385, *et seq.*) do not provide a remedy at law for the illegal assessment of an inheritance tax.

3. SUCCESSION TAXES—*Erroneous Assessment—Jurisdiction of Court —Auditor of Public Accounts.*—In the instant case it was claimed that the Circuit Court of Clarke county had no jurisdiction to entertain a suit in equity by the beneficiaries under a will complaining of the assessment of inheritance taxes, under section 44 of the tax bill, as amended, March 22, 1916 (Acts 1916, p. 812), as the Code of 1919, section 6049, requires a suit in which the Auditor is a necessary party defendant to be brought in the city of Richmond, and section 6051, Code of 1919, provides for the transfer to the Circuit Court of the city of Richmond of any such suit which is brought in any other court of the State. If the Auditor

had not appeared or had objected to the bill on this ground, or had made a motion for the transfer of the case to the Circuit Court of the city of Richmond, it would have been the duty of the court to transfer the case. But as no such motion was made, and the Auditor voluntarily answered the bill, and the case was docketed and heard upon the merits, the question could not be raised for the first time on appeal.

4. STATUTES—*Constitutionality* — *Title* — *Inheritance Tax.*—Section 44 of the tax bill, as amended March 22, 1916 (Acts 1916, p. 812); is not void as in violation of section 52 of the Constitution of 1902, which provides that no law shall embrace more than one object, which shall be expressed in its title.

5. STATUTES—*Constitutionality*—*Title*—*Inheritance Tax.*—The title of the act of March 22, 1916 (Acts 1916, p. 812), recites that it amends section 44 of the general tax bill, entitled "An act to raise revenue for the support of the government," etc. This and other sections of that general act have been frequently amended by reference to its original title with the number of the amended section only. Section 44 had been previously amended, and the title of that amendment referred specifically to taxes on collateral inheritances. When this amendment of 1916 was made, the title not only referred to section 44 of the general tax bill, but omitted the word "collateral" from its title, and plainly stated that the amendment was "in relation to tax upon inheritances." The act does not therefore violate section 52 of the Constitution of 1902.

6. SUCCESSION TAXES—*Acts 1916, p. 812*—*Constitutionality*—*Due Process of Law.*—Acts 1916, p. 812, amending section 44 of the tax bill, is not in violation of the due process of law provisions of the Federal and State Constitutions.

7. TAXATION—*Due Process of Law*—*Opportunity to be Heard.*—A law authorizing the imposition of a tax or assessment upon property according to its value does not infringe that provision of the fourteenth amendment to the Constitution which declares that no State shall deprive any person of property without due process of law, if the owner has an opportunity to question the validity or the amount of it either before that amount is determined or in subsequent proceedings for its collection.

8. TAXATION—*Due Process of Law*—*General Rule.*—In order to bring taxation imposed by a State, or under its authority, within the scope of the provision of the fourteenth amendment, which prohibits the deprivation of property without due process of law, the case should be so clearly and pal-

pably an illegal encroachment upon private rights as to leave no doubt that such taxation by its necessary operation is really spoliation under the power to tax.

9. SUCCESSION TAXES—*Nature of the Tax.*—An inheritance tax is not a tax upon property, but must be paid as a condition precedent to the transmission or transfer of property from the dead to the living.

10. DESCENT AND DISTRIBUTION—*Right of Succession the Creature of Law.*—The right to take property by devise or descent is the creature of the law and secured and protected by its authority. The legislature might, if it saw proper, restrict the succession to a decedent's estate either by devise or descent to a particular class of his kindred—say, to his lineal descendants and ascendants; it might impose terms and conditions upon which collateral relations may be permitted to take it; or it may tomorrow, if it pleases, absolutely repeal the statute of wills and that of descents and distributions. The person who succeeds to the property of a decedent can only do so upon such terms as the legislature imposes.

11. SUCCESSION TAXES—*Right of Taxpayer—Notice—Hearing.*— There is no inherent right to succeed to property of decedents (on the contrary, the State has the inherent sovereign right to impose conditions on such succession), it follows that the person who takes it has no property interest in so much of that property which the General Assembly withholds from him. Having no such interest therein, he is not entitled either to notice or day in court with reference to such part as the State, under its unquestioned and inherent power, withholds.

12. TAXATION—*Due Process of Law.*—If the tax statute or the general laws of the State provide an opportunity in the courts for the correction of erroneous assessments, and for relief from improper taxation, this constitutes due process of law.

13. SUCCESSION TAXES—*Due Process of Law—Acts 1916, p. 812.*— Under section 44 of the tax bill, as amended by Acts 1916, p. 812, if the assessment is proper—that is, if it be based upon the proper valuation—no right has been invaded. It is only in case the assessment is based upon an excessive valuation, or at an excessive rate, that any injury can be done or the property of the beneficiary taken, and in such case, the act fairly construed means that the legislature has provided a remedy in equity for every case which is not provided for by sections 567, et seq. of the Code of 1904 (Code of 1919, sections 2385, *et seq.*).

14. STATUTES—*Construction in Favor of Constitutionality—Succession Taxes.*—If there be any fair doubt as to the proper construction of a statute imposing taxes on inheritances and of the legislative intent, that doubt must be resolved in favor of the validity of the statute, for if under one construction it may be held not to provide due process and under another to afford such due process, that construction which is favorable to the validity of the statute should be adopted, for the legislature will not be presumed to have intended to pass an invalid law.

15. TAXATION—*Due Process of Law—License Tax—Notice to Taxpayer.*—The character of the tax—that is, whether it be a property or a license tax—is immaterial. Notice to the taxpayer previous to the assessment is not required as to either. All that is essential in such cases to constitute due process of law is that the law shall afford the taxpayer an opportunity to contest its validity and to show that it is an illegal exaction before it is enforced or his liability therefor is irrevocably fixed.

16. SUCCESSION TAXES—*Injunction—Complainants' Readiness to Pay Amount Justly Due.*—In the instant case there was no doubt as to the precise value of the property upon which the inheritance tax was claimed. The complainants had no right to receive any part of decedent's property except by permission of the State; the State had provided that they should receive only such part of it as remained after deducting the inheritance tax. Under these circumstances, no court of equity should entertain a bill for injunction unless complainants were ready and willing to pay the amount of tax which was justly due upon a fair valuation of the property claimed.

17. SUCCESSION TAXES—*Safeguards Against Injustice.*—Code of 1904, section 2647, *Id.* ch. 121, section 2671, *et seq.;* Code of 1919, ch. 219, requiring appraisers to be appointed by the court in which the personal representative qualifies, to appraise the property with which the representative is chargeable, requiring an inventory and certain accounts all to be recorded in the public records of the court for the information and protection of the beneficiary, if substantially followed, render the danger of any injustice to a beneficiary exceedingly remote.

18. SUCCESSION TAXES—*Injunction—Remedy by Taxpayer.*—At the time the bill in the instant case was filed in equity complaining of the assessment of inheritance taxes under section 44 of the tax bill, as amended March 22, 1916 (Acts 1916, p. 812), the legislature had already amended section

44 of the inheritance tax law (Acts 1918, p. 416), and pro-
vided a remedy by motion corresponding with that afforded
by sections 567, *et seq.*, of the Code of 1904, but this 1918
statute had not then become effective, and hence (because
the Auditor appeared without protest or motion to remove)
the court properly entertained jurisdiction of the cause; yet
had the complainants postponed the institution of their suit
from June 5 to June 21, it would have been unnecessary to
do so for their remedy by motion under that amended statute
would have been clearly adequate.

19. SUCCESSION TAXES—*Amount of Tax—Entire Estate or Interest
of Beneficiary.*—Under Acts 1916, p. 812, providing for a
direct inheritance tax, the tax is to be levied, not upon
the value of the entire estate, but upon the value of the
property received by the beneficiary. The word "estate" as
used in the first sentence of the act refers not to the entire
estate of the decedent, but to the specific estate or property
which passes to the several beneficiaries, and the words
"property or interest," and "estate," are used interchange-
ably to convey the same meaning, and refer to such propor-
tion of the estate of the decedent as passes to the particular
beneficiary.

Appeal from a decree of the Circuit Court of Clarke
county. From the decree defendants appeal and com-
plainants assign cross-error.

*Affirmed.*

The opinion states the case.

*Jno. R. Saunders, Attorney-General,* and *E. Warren Wall,*
for the Commonwealth.

*W. Brydon Tennant* and *R. W. Carrington,* for the ap-
pellees.

PRENTIS, J., delivered the opinion of the court.

Agnes Mayo Carter, executrix, widow of Thomas Nelson
Carter, deceased, and Isabella Burwell Carter, his daugh-

ter, the sole beneficiaries under his will, instituted their suit in equity in the Circuit Court of Clarke county on June 5, 1918, complaining of the assessment of inheritance taxes under section 44 of the tax bill, as amended March 22, 1916 (Acts 1916, p. 812). The Auditor of Public Accounts was not made a party to the suit, but promptly appeared by counsel, upon his own motion was made a party defendant, and filed his demurrer and answer to the bill. The court overruled the demurrer, held the statute constitutional, but enjoined the amended or supplemental assessment which had been made by the clerk of the court under instructions from the Auditor, holding that the proper construction of the statute is that instead of being determined by the value of the entire estate of the decedent, the tax thereby imposed should be computed upon each distributive share thereof, after deducting the exemption allowed, and enjoined the enforcement of the larger and later assessment.

The Commonwealth assigns as error—

1. The overruling of the demurrer and refusing to dismiss the bill.

[1, 2] (a) It is claimed that the demurrer should have been sustained upon the ground that the complainants had an adequate remedy at law; citing *Commonwealth* v. *Tredegar Co.*, 122 Va. 506, 95 S. E. 279. If this be true, of course the court erred, for the act of February 24, 1916 (Acts 1916, p. 89), provides that "no suit for the purpose of restraining the assessment or collection of any tax, State or local, shall be maintained in any court of this Commonwealth, except when the party has no adequate remedy at law." Before the enactment of that statute, the taxpayer who felt aggrieved by assessment of his property for taxation, at his election, could either institute his suit in equity to enjoin the collection of the tax. or proceed by motion under Code, sections 567 to 573, inclusive (Code 1919, secs.

2385, *et seq.*). This jurisdiction has been so long firmly established in this State that it no longer admits of question. *Wytheville* v. *Johnson,* 108 Va. 590, 62 S. E. 328, 18 L. R. A. (N. S.) 960; 128 Am. St. Rep. 981; *Tiller* v. *Excelsior Coal Corp.,* 110 Va. 153, 65 S. E. 507. So that the question here arising as to this point is whether or not those sections provide a remedy for the illegal assessment of an inheritance tax. The reading thereof is sufficient to show that they afford no such remedy. They refer in terms to taxes on land or other property, and the assessments thereof made by the commissioners of the revenue. It is true that in *Posey* v. *Commonwealth,* 123 Va. 551, 96 S. E. 771, this statutory remedy for the correction of an assessment of an inheritance tax alleged to be erroneous was invoked in the trial court and here by counsel of ability. The point, however, was either waived or unnoticed, and that case is not authority for the proposition which the Commonwealth here contends for, because the question was neither raised nor considered.

[3] (b) It is claimed that the Circuit Court of Clarke county had no jurisdiction to entertain this suit, because the Auditor of Public Accounts was a necessary party thereto, and it is true that the Code, 1919, section 6049, requires a suit in which the Auditor is a necessary party defendant to be brought in the city of Richmond; and that section 6051 provides for the transfer to the Circuit Court of the city of Richmond of any such action or suit which is brought in any other court of the State.

If the Auditor had not appeared or had objected to the bill on this ground, or had made a motion for the transfer of the case to the Circuit Court of the city of Richmond, it would certainly have been the duty of the court under this statute to transfer the case. *Johnson* v. *Hampton Institute,* 105 Va. 319, 54 S. E. 31. No such motion, however, was made in the circuit court and the Auditor voluntarily

answered the bill, and the record shows that the case was docketed and heard there upon the merits by consent. Although, as stated, it would have been the duty of the trial court to change the venue had the proper motion been made, such a question cannot be raised for the first time in this court after such a waiver in the trial court.

2. The appellees assign cross-error under Rule VIII (71 S. E. VIII).

[4, 5] (a) It is claimed that the inheritance tax law of 1916 is void as in violation of section 52 of the Constitution, which provides that no law shall embrace more than one object, which shall be expressed in its title.

This question has been so frequently considered by this court that it is not considered necessary to review the authorities. We think it sufficient to say in this case that the title of the act recites that it amends section 44 of the general tax bill, entitled "An act to raise revenue for the support of the government," etc. This and other sections of that general act have been frequently amended by reference to its original title with the number of the amended section only. Section 44 had been previously amended and the title of that amendment referred specifically to taxes on collateral inheritances. When this amendment of 1916 was made, the title not only referred to section 44 of the general tax bill, but omitted the word "collateral" from its title, and plainly stated that the amendment was "in relation to tax upon inheritances." The general purpose of the act being to raise revenue, and the title of this amendment of 1916 showing that it was to raise revenue upon inheritances, clearly indicates the changed purpose of the legislature to impose taxes upon direct as well as upon collateral inheritances, and the act does not violate section 52 of the Constitution.

[6, 7] (b) It is also contended that the act violates both the Federal and the State Constitutions in that it deprives the appellees of their property without due process of law.

The case of *Heth* v. *City of Radford*, 96 Va. 272, 31 S. E. 8, is cited. That case determines that assessments of property under the charter of the city of Radford were invalid because there was no provision either in the charter or general law whereby such assessments could be corrected, and there is a general statement of the law governing the question. The cases of *Norfolk* v. *Young*, 97 Va. 728, 34 S. E. 886, 47 L. R. A. 574, and *Violett* v. *Alexandria*, 92 Va. 561, 23 S. E. 909, 31 L. R. A. 382, 53 Am. St. Rep. 825, are both cases of local assessments for street improvements, and the same strict rules do not prevail in tax cases as in proceedings to take private property by condemnation for public use.

This act (paragraph F) authorizes the collection of inheritance taxes in certain contingencies by motion in court, and in *Winona, etc., Land Co.* v. *Minnesota*, 159 U. S. 526, 16 Sup. Ct. 83, 40 L. Ed. 251, where the statute under consideration authorized the collection of the tax by suit in court, and the contention was made that this did not provide due process of law, this is said, 159 U. S. at p. 537, 16 Sup. Ct. 88, 40 L. Ed. 251) : "Questions of this kind have been repeatedly before this court, and the rule in respect thereto often declared. That rule is that a law authorizing the imposition of a tax or assessment upon property according to its value does not infringe that provision of the fourteenth amendment to the Constitution which declares that no State shall deprive any person of property without due process of law if the owner has an opportunity to question the validity or the amount of it either before that amount is determined or in subsequent proceedings for its collection. *McMillen* v. *Anderson*, 95 U. S. 37, 24 L. Ed. 335 ; *Davidson* v. *New Orleans*, 96 U. S. 97, 24 L. Ed. 616 ; *Hagar* v *Reclamation Dist. No.* 108, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569 ; *Spencer* v. *Merchant*, 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763 ; *Palmer* v. *McMahon*, 133 U.

S. 660, 10 Sup. Ct. 324, 33 L. Ed. 772; *Lent* v. *Tillson,* 140 U. S. 316, 11 Sup. Ct. 825, 35 L. Ed. 419; *Pittsburg, C. C. & St. L. R. Co.* v. *Backus,* 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031."

Since that case was decided, the same doctrine has been approved in *Weyerhaueser* v. *Minn.,* 176 U. S. 550, 20 Sup. Ct. 485, 44 L. Ed. 583; *Security Tr. Co.* v. *Lexington,* 203 U. S. 323, 27 Sup. Ct. 87, 51 L. Ed. 204; *Powers* v. *Richmond,* 122 Va. 328, 94 S. E. 803, affirmed by Supreme Court of the United States without an opinion on December 9, 1919, 521 U. S. 539, 40 Sup. Ct. 118, 64 L. Ed. —.

[8] The decisions are so numerous and the underlying reasons therefor have been so frequently announced by the courts, that it is not deemed necessary to multiply authorities. The general doctrine is succinctly and clearly stated by that great master, Judge Cooley, thus: "In order to bring taxation imposed by a State, or under its authority, within the scope of the provision of the fourteenth amendment, which prohibits the deprivation of property without due process of law, the case should be so clearly and palpably an illegal encroachment upon private rights as to leave no doubt that such taxation by its necessary operation is really spoilation under the power to tax." 1 Cooley on Taxation (3d ed.) p. 55.

[9, 10] The nature of inheritance taxes is almost everywhere conceded (and this appears to be ignored in *Ferry* v. *Campbell,* 110 *Iowa* 290, 81 N. W. 604, 50 L. R. A. 92, so much relied on), and in this State has been settled since the case of *Eyre* v. *Jacob* (1858), 14 Gratt. (55 Va.) 422, 73 Am. Dec. 367. This case, which arose under the act of February 6, 1844 (Acts 1843-44, c. 3), as amended by Code 1849, ch. 39, sec. 6, has been frequently cited, and is everywhere regarded as a leading case. An inheritance tax is not a tax upon property, but must be paid as a condition precedent to the transmission or transfer of property from

the dead to the living. "The right to take property by devise or descent is the creature of the law and secured and protected by its authority. The legislature might, if it saw proper, restrict the succession to a decedent's estate either by devise or descent to a particular class of his kindred— say, to his lineal descendants and ascendants; it might impose terms and conditions upon which collateral relations may be permitted to take it; or it may tomorrow, if it pleases, absolutely repeal the statute of wills and that of descents and distributions * * *." *Eyre* v. *Jaocb, supra,* 14 Gratt. (55 Va.) 430, 73 Am. Dec. 367. It is an excise tax, a tax upon a civil right or privilege which only exists because granted by the State. The person who succeeds to the property of a decedent can only do so upon such terms as the legislature imposes. He has no property right therein except such as the legislature sees fit to permit. *Peters* v. *Lynchburg,* 76 Va. 931; *Magoun* v. *Illinois, etc., Co.,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037. The authorities, which are numerous, are collected in a note 33 L. R. A. (N. S.) 606; Gleason and Otis on Inheritance Taxation, 2.

[11-13] It being perfectly clear that there is no inherent right to succeed to property of decedents (on the contrary the State has the inherent sovereign right to impose conditions on such succession), it follows that the person who takes it has no property interest in so much of that property which the General Assembly withholds from him. Having no such interest therein, he is not entitled either to notice or day in court with reference to such part as the State under its unquestioned and inherent power withholds. The act under review provides that the clerk or court shall assess such inheritance tax, and does not require any previous notice to those who are to receive the gift or inheritance. If the assessment is proper—that is, if it be based upon the proper valuation—then no right has been invaded. It is only in case the assessment is based upon an excessive

valuation, or at an excessive rate, that any injury can be done or the property of the beneficiary taken. The question presented is whether or not the laws of Virginia afford a remedy for such an injury.

It is a matter of common knowledge that the General Assembly of Virginia was engaged in a general revision of the tax laws at the 1916 session. Among several new statutes enacted pursuant to this general purpose are the two that have been referred to, one imposing taxes upon inheritances and the other forbidding the institution of any suit in equity for the purpose of restraining the assessment or collection of any State or local tax, except when the complaining party has no remedy at law. These statutes should be construed together as parts of the general plan of taxation. It has been an established equity practice in Virginia for many years, that an injunction will lie to restrain the illegal collection of taxes. The legislature had also provided in Code, sections 567 to 573, inclusive, a simple method by motion for the correction of erroneous assessments for taxation, for exoneration of the property thus improperly assessed and for the refunding of such amounts as had been wrongfully collected of the taxpayer. Never before that session, however, had the legislature by statute recognized the right of a taxpayer to maintain a suit in equity to enjoin the collection of taxes, though, as above stated, the jurisdiction had existed for many years.

Considering these facts, it is apparent that when the legislature had provided remedies by motion for the correction of erroneous taxation, and then curtailed the equity jurisdiction to grant injunctions unless there was no other adequate remedy provided by the other statutes for the correction of such wrongs, it by that statute and by necessary implication therefrom sanctioned the right of the taxpayer to sue in the courts of equity, and thereby authorized such suits in every case for which the legislature had not

otherwise provided. It is everywhere now conceded that if the tax statute or the general laws of the State provide an opportunity in the courts for the correction of erroneous assessments, and for relief from improper taxation, this constitutes due process of law.

We conclude, then, that this statute, fairly construed, means that the legislature has thereby provided a remedy in equity for every case which is not provided for by sections 567, *et seq.*, or otherwise. This act constitutes the provision by statute for such relief which has been said to be essential.

If it be urged that this conclusion is at variance with those many cases in which it is held that the remedy must be expressly provided in the tax law, or in some other statute, then it is replied that it is nevertheless in full accord with the reason of those cases, and my Lord Coke saith that, "The reason of the law is the life of the law." There are precedents, however, which sustain this conclusion.

In the case of *McMillen* v. *Anderson*, 95 U. S. 37, 24 L. Ed. 335, it is held that an act of Louisiana which recognizes the right to an injunction to stay the collection of an illegal license tax, and which regulates the proceedings in such a case, constitutes due process of law, and that under such a statute the complaining taxpayer could not claim to be without a legal remedy. It is said that because a license tax was there involved, this fact differentiates that case from this one, there being no question of valuation of property, the tax itself being fixed in amount by the statute. The court, however, did not rest its decision upon that ground, but expressly held that the statutory recognition of the right to an injunction afforded all the remedy for relief from an illegal tax which is necessary to constitute due process of law. This case has never been questioned or modified and was cited with approval in the case of *King* v. *Portland*, 184 U. S. 70, 22 Sup. Ct. 293, 46 L. Ed. 436,

where it is said that "the manner of notice and the specific period of time in the proceedings when he may be heard are not very material, so that reasonable opportunity is afforded before he has been deprived of his property or the lien thereon is irrevocably fixed." It is also cited in *Kentucky Union Co.* v. *Kentucky*, 219 U. S. 140, 31 Sup. Ct. 171, 55 L. Ed. 155, in *United States* v. *Sherman & Sons Co.*, 237 U. S. 157, 35 Sup. Ct. 520, 59 L. Ed. 883, and in other cases.

It is held in the case of *Oskamp* v. *Lewis* (C. C.) 103 Fed. 906, under an Ohio statute, that the assessment of property for taxation, although without notice to the owner, is not in violation of the constitutional inhibition against taking property without due process of law, where by statute the owner is expressly given the right to test the validity of the assessment by a suit to enjoin the collection of the tax, the amount of which and of the assessment being matters of public record at all times after the assessment is made. The same conclusion is reached in other Ohio cases. *Hostetter* v. *State*, 26 Ohio Cir. Ct. R. 702. This case was reversed in the appellate court, but not upon this ground. *Enry's Ex'rs* v. *State*, 72 Ohio St. 448, 74 N. E. 650; *Adler* v. *Whitlock*, 44 Ohio St. 571, 9 N. E. 680; *Musser* v. *Adair*, 55 Ohio St. 474, 45 N. E. 903; *Taylor* v. *Crawford*, 72 Ohio St. 560, 74 N. E. 1065, 69 L. R. A. 805, L. R. A. 1916E, 42.

In *Hagar* v. *Reclamation District*, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569, this is said: "But where the taking of property is in the enforcement of a tax, the proceeding is necessarily less formal, and whether notice to him is at all necessary may depend upon the character of the tax and the manner in which its amount is determinable. The necessity of revenue for the support of the government does not admit of the delay attendant upon proceedings in a court of justice, and they are not required for the enforcement of taxes or assessments. As stated by Mr. Justice

Bradley in his concurring opinion in *Davidson* v. *New Orleans*: 'In judging what is "due process of law," respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain or the power of assessment for local improvements or some of these; and if found to be suitable or admissible in the special case, it will be adjudged to be "due process of law," but if found to be arbitrary, oppressive or unjust, it may be declared to be not "due process of law." ' "

This language from the opinion in *Security Trust, etc., Co.* v. *Lexington*, 203 U. S. 323, 27 Sup. Ct. 87, 51 L. Ed. 204, might have been written of the case in judgment: "But in this case the State court has afforded to the taxpayer full opportunity to be heard on the question of the validity and amount of the tax, and, after such opportunity, has rendered a judgment which provides for the enforcement of the tax as it has been reduced by the court * * * The plaintiff has, therefore, been heard, and on the hearing has succeeded in reducing the assessment. What more ought to be given? Whether the opportunity to be heard which has been afforded to the plaintiff has been pursuant to the provisions of some statute, as in *McMillen* v. *Anderson*, 95 U. S. 37, 24 L. Ed. 335, and *Hagar* v. *Reclamation Dist. No.* 108, 111 U. S. 701, 28 L. Ed. 569, 4 Sup. Ct. 663, or by the holding of the court that the plaintiff has such right in the trial of a suit to enjoin the collection of the tax, is not material." The same case is reported in *Bell's Trustee* v. *Lexington*, 120 Ky. 199, 85 S. W. 1081; *Gallup* v. *Schmidt*, 154 Ind. 196, 56 N. E. 443; *S. C.*, 183 U. S. 306, 22 Sup. Ct. 162, 46 L. Ed. 212.

[14] If there be any fair doubt as to the proper construction of these statutes and of the legislative intent, that doubt must be resolved in favor of the validity of the statutes, for if under one construction they may be held not to provide due process and under another to afford

such due process, that construction which is favorable to the validity of the statute should be adopted, for the legislature will not be presumed to have intended to pass an invalid law. *Fletcher* v. *Peck,* 6 Cranch 128, 3 L. Ed. 162; *Whitlock* v. *Hawkins,* 105 Va. 248, 53 S. E. 401; *Ex. Parte Settle,* 114 Va. 716, 77 S. E. 496; *White & Co., Inc.* v. *Jordan,* 124 Va. 465, 98 S. E. 24. If the laws of the State as interpreted and administered in its own courts accord to one assessed with taxes an adequate corrective method this is sufficient.

[15]    The character of the tax—that is, whether it be a property or a license tax—is immaterial. Notice to the taxpayer previous to the assessment is not required as to either. All that is essential in such cases to constitute due process of law, is that the law shall afford the taxpayer an opportunity to contest its validity and to show that it is an illegal exaction before it is enforced or his liability therefor is irrevocably fixed.

It is not the purpose of these constitutional inhibitions to embarrass or hinder the States in the exercise of the essential powers of taxation, for merely fanciful reasons or for the correction of imaginary grievances. They constitute a sufficient shield for the prevention of substantial injuries and should not upon doubtful construction be welded into a sword for the destruction of these necessary governmental powers.

[16]    Another view which demonstrates the justice of our conclusions in this case grows out of the fact that here there is no doubt whatever as to the precise value of the property upon which the inheritance tax is claimed, for its exact value appears in the record in the statement of facts, by the admission of counsel for the executrix, and is nowhere questioned.

In *People's National Bank* v. *Marye* (C. C.), 107 Fed. 570, which went to the Supreme Court of the United States,

(191 U. S. 272, 24 Sup. Ct. 68, 48 L. Ed. 180) this is said: "The universal rule of a court of equity is that he who seeks its adequate interposition must himself do equity. Is there any higher equity than that a citizen should pay the amount of a tax which he concedes to be just and equitable, before asking the aid of a court of equity to grant an injunction to enjoin the collection of any greater sum? The complainant, however, insists that the rule does not exist where the assessments are void, and not merely irregular; and it asserts that these assessments are void, because the acts under which they were laid do not provide for notice to the shareholder before determining the value of the share upon which the tax is to be laid, and also because the assessment violated the act of Congress in being at a greater rate than is assessed upon other moneyed capital.

"We are of opinion, however, that these assessments were not void within the meaning of the rule which absolves the taxpayer from the necessity of paying or tendering the amount equitably due from him. If there were no right to assess the particular thing at all, either because it is exempt from taxation, or because there is no law providing for the same, an assessment under such circumstances would be void, and, of course, no payment or tender of any amount would be necessary before seeking an injunction, because there could be no amount equitably due where there never had been a right to assess at all. Where, however there is a statute which provides for an assessment, and gives jurisdiction to the taxing officer, under some circumstances, to make one, but the particular assessment is invalid for want of a notice to the taxpayer, or some other kindred objection, the equitable duty still rests upon him to pay what would be his fair proportion of the tax as compared with that laid upon other property, before he can ask the aid of the chancellor to enjoin the collec-

tion of the balance. This is the equitable rule, and it is good morals as well. To say that the act under which the tax is levied is unconstitutional, and therefore, is the same as no law, and hence there is no duty to pay anything, because no tax can be levied without some law therefor, is to state the proposition too broadly. We concede that if the law were unconstitutional because, for instance, there was no constitutional power to tax the particular property, there is no necessity to pay anything. But where some part of the law may be unconstitutional because of a failure to comply with some matter of detail, but the amount which the owner of the property ought to pay is perfectly clear under the provisions of law, then if the taxpayer desires to be exempted from paying more than his share, he must pay or offer to pay his proportion, before equity will aid him in his effort to escape paying a disproportionate share."

That language appears peculiarly appropriate as to inheritance taxes. The recipient has no inherent right to receive any part of decedent's property. He can only do so by permission of the State; the State has by statute provided that he shall only receive such part of it as remains after deducting the inheritance tax, and has required the personal representative to retain such tax upon settlement with the beneficiary. Under these circumstances, it would seem that no court of equity should entertain a bill unless the complainant is ready and willing to pay the amount of tax which is justly due upon a fair valuation of the property claimed, of which valuation no one else has any better means of information.

[17] The danger of any injustice to a beneficiary is exceedingly remote also because of the statutes (Code 1904, sec. 2647; *Id.*, ch. 121, sec 2671, *et seq.;* Code 1919, ch. 219), requiring appraisers to be appointed by the court in which the personal representative qualifies, who after

being duly sworn must appraise the property with which the fiduciary is chargeable, and requiring him to return promptly to the commissioner of accounts an inventory of the decedent's estate as well as an account of all sales of property made by him, and all these to be recorded in the public records of the court for the information and protection of the beneficiary. Then the accounts of the personal representative must be annually audited by the commissioner of accounts, returned to the court with leave and opportunity to any one interested to file exceptions thereto, and when approved by the court the accounts must also be recorded, subject to be thereafter surcharged and falsified for errors or omissions. These statutes, if substantially followed, and these documents upon the records of the court in which the decedent had his domicile and in which the fiduciary qualified, will usually show the character, amount and value of the property transmitted, and therefore, necessarily determine the amount of the inheritance taxes due thereon.

[18] At the time this bill was filed, the legislature had already amended section 44, the inheritance tax law (Acts 1918, p. 416), and provided a remedy by motion corresponding with that afforded by sections 567, *et seq.* of the Code, but this 1918 statute had not then become effective, and hence (because the Auditor appeared without protest or motion to remove) the court properly entertained jurisdiction of the cause; yet had the complainants postponed the institution of their suit from June 5 to June 21, it would have been unnecessary to do so for their remedy by motion under that amended statute would have been clearly adequate. *Heth* v. *Commonwealth,* post p. 493, 102 S. E. 66, this day decided.

[19] 3. The only question remaining to be determined is as to the amount of the tax. The trial court decreed that it should be determined by the value of the estate

passing to each beneficiary, whereas, the Commonwealth claims that it should be determined by the value of the whole estate of the decedent.

There are many cases from various States to which we have been referred by counsel, and by the very great weight of authority it is held, in construing statutes somewhat similar to this, in the absence of a clear provision in the statute to the contrary, that an inheritance tax is levied, not upon the value of the entire estate, but upon the value of the property received by the beneficiary. *Eyre* v. *Jacob, supra; Miller's Ex'or* v. *Commonwealth,* 27 Gratt. (68 Va.) 110; *Goddard* v. *Goddard,* 9 R. I. 293; *State* v. *Switzler,* 143 Mo. 287, 45 S. W. 253, 40 L. R. A. 280, 65 Am. St. Rep. 653; *Booth* v. *Commonwealth,* 130 Ky. 88, 113 S. W. 61, 33 L. R. A. (N. S.) 592; *State* v. *Hamlin,* 86 Me. 495, 30 Atl. 76, 25 L. R. A. 632, 41 Am. St. Rep. 569; *People* v. *Union Trust Co.,* 255 Ill. 168, 99 N. E. 377, L. R. A. 1915D, 450, Ann. Cas. 1913D, 515; *Estate of Howe,* 112 N. Y. 100, 19 N. E. 513, 2 L. R. A. 825; *Knowlton* v. *Moore,* 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969.

The Virginia statute of 1916 (printed in the margin*) we think should be construed in accordance with the pre-

*Section 44. (A) Tax. on Inheritance.—When any estate in the Commonwealth of any decedent shall pass under a will or under the laws regulating descents and distributions, to any person, or to or for the use of any person, the estate so passing shall be subject to a tax of one per centum on every hundred dollars' value thereof; provided, that estates passing to or for the use of the grandfather, grandmother, father, mother, husband, wife, brother, sister or lineal descendant of such decedent shall be subject to a tax of one per centum on every hundred dollars' value thereof in excess of fifteen thousand dollars, and provided further that such tax shall not be imposed upon any property bequeathed or devised where such bequest or devise is exclusively for State, county, municipal, benevolent, charitable, educational or religious purposes. The foregoing rates are for convenience termed the primary rates. When the amount of the market value of such property or interest exceeds fifteen thousand dollars, the rate of tax upon such excess shall be as follows:

(1) Upon all in excess of fifteen thousand dollars up to fifty thousand dollars, at the primary rates.

(2) Upon all in excess of fifty thousand dollars and up to two hundred and fifty thousand dollars, two times the primary rates.

(3) Upon all in excess of two hundred and fifty thousand dollars and up to one million dollars, three times the primary rates.

(4) Upon all in excess of one million dollars, four times the primary rates.

(B) The personal representative of such decedent shall pay the whole of such tax, except on real estate, to sell which or to receive the

vailing view. While the language is not perfectly clear, it would be impossible to administer it fairly if the contention of the Commonwealth should be sustained. For instance, it is expressly provided that a bequest or devise for State, county, municipal, charitable, educational or religious purposes shall be exempt, so that is it manifest that the value of the entire estate does not determine the tax if any part of it is thus disposed of by will. Such part must be first deducted from the gross value of the estate. Then, while subsection (A) refers to estates of decedents which pass, thereby implying the entire estate of the decedent, still in the next clause the statute provides for the

rents and profits of which he is not authorized by the will, and the sureties on his official bond shall be bound for the payment thereof.

(C) Where there is no personal estate, or the personal representatative is not authorized to sell or receive the rents and profits of the real estate, tax shall be paid by the devisee or devisees or those to whom the estate may descend by operation of the law and the tax shall be a lien on such real estate, and the treasurer may rent or levy upon and sell so much of said real estate as shall be sufficient to pay the tax and expenses of sail, et cetera.

(D) Such payment shall be made to the treasurer of the county or city in which certificate was granted such personal representative for obtaining probate of the will or letters of administration.

(E) The corporation or hustings court of a city, of the circuit court of a county or city, the chancery court of the city of Richmond, the law and chancery court of the city of Norfolk, or the clerk of the circuit court of a county or city before whom a will is probated or administration is granted, shall determine the inheritance tax, if any, to be paid on the estate passing by will or administration, and shall enter of record in the order book of the court or clerk, as the case may be, by whom such tax shall be paid and the amount to be paid. The clerk of the court shall certify a copy of such order to the treasurer of his county or city and to the Auditor of Public Accounts for which services the clerk shall be paid a fee of two dollars and fifty cents by the personal representative of the estate. The Auditor of Public Accounts shall charge the treasurer with the tax and the treasurer shall pay the same into the treasury as collected, less a commission of five per centum. Every personal representative or otehr party or officer failing in any respect to comply with this section shall forfeit one hundred dollars.

(F) Any personal representative, devisee or person to whom the estate may descend by operation of law, failing to pay such tax before the estate on which it is chargeable is paid or delivered over (whether he be applied to for the tax or not) shall be liable to damages thereon at the rate of ten per centum per annum for the time such estate is paid or delivered over until the tax is paid which damages may be recovered with the tax, on motion of the attorney for the Commonwealth and in the name of the Commonwealth against him, in the circuit court for the county or in the corporation or hustings court of the city wherein such tax is assessed, except that in the city of Richmond the motion shall be in the chancery court. Such estate shall be deemed paid or delivered at the end of a year from the decedent's death, unless and except so far as it may appear that the legatee or distributee has neither received such estate nor is entitled then to demand it. All taxes upon said inheritance paid into the State treasury shall be placed to the credit of the public school fund of the Commonwealth and shall be apportioned according to school population and be used for the primary and grammar grades.

62

exemption of $15,000 in favor of the nearest relatives, and uses the words "property" or "interest" as subject to this exemption, and clearly does not refer to the entire estate of the decedent, but only to the property or interest which passes to such favored relatives. Suppose an entire estate were bequeathed, one-third to a stranger, one-third for benevolent purposes, and the residuum to a son. In such a case the son, who is clearly intended to be favored, by the terms of the statute, would bear the greatest pecuniary burden, for if the tax is based upon the value of the whole estate its amount would be greater than if based upon the separate shares, and hence the residuum would suffer the greatest diminution. Then which of the differing rates would such an estate bear? The gift for benevolent purposes is wholly exempt from the inheritance tax while property given to the stranger is subject to a larger inheritance tax than that given to the son. Then real estate passing to an heir or devisee is subject to a lien. If the tax is on the entire estate of the decedent, how is the amount of such lien to be determined if not upon its value rather than upon the value of property which passes to some other beneficiary. So, as pointed out by Mr. Justice White in the case of *Knowlton* v. *Moore, supra,* the difficulties of construing such a tax as determined by the value of the entire estate appear to be numerous if not insuperable.

It is claimed by the Commonwealth that the higher rates should be imposed unless the entire property of the decedent goes to the direct or preferred beneficiaries; that, if any part of it goes to the other class, then the higher rates should be imposed upon the entire estate, including that portion received by the preferred class as well as upon that received by the other class, though how, in such case, the gross amount of the tax is to be apportioned between the individuals in the several classes does not appear, and

we find nothing in the statute to justify imposing such higher rates upon the preferred beneficiaries.

We conclude then that the first clause determines the subject of the tax and that subject is stated to be, "any estate * * of any decedent" which passes under the will or by statute "to any person, or for the use of any person," and provides that "the estate so passing shall be subject to a tax." The subject of the tax is thus clearly indicated to be, not the entire estate of the decedent, but the estate (or such part of it) as passes to any person whether he be devisee, heir at law, legatee or distributee.

The word "estate" as used in the first sentence refers, not to the entire estate of the decedent, but to the specific estate or property which passes to the several beneficiaries, and the words "property or interest," and "estate," are used interchangeably, to convey the same meaning, and refer to such proportion of the estate of the decedent as passes to the particular beneficiary.

The trial court rightly determined that the inheritance tax upon this property was correctly assessed by the clerk of the court in the first instance. Each of them is entitled to an exemption of $15,000, then the primary rate of one per cent. was properly applied to the excess up to $50,000, or on $35,000, and the higher rates thereafter on such excess above $50,000. as clearly indicated in the statute. The tax should be computed upon the market value of each share of the property after such deduction of $15,000 is made.

This construction accords with the legislative policy as clearly expressed in the 1918 amendment.

*Affirmed.*

SIMS, J., dissenting:

For the reasons stated in my dissenting opinion in the

case of *Withers, et als,* v. *Jones' Executrix, post* p. 500, 102 S. E. 68, this day decided, I am constrained to dissent from the majority opinion above on the subject of the constitutionality of the statute. I concur, however, in the holding with regard to the deductions which should be made from the gross value of the estate and the exemptions to which the appellees are entitled.