# Richmond

F. A. Davis, Commissioner, Etc. v. John E. Marr, Et Al.

January 26, 1959.

Record No. 4860.

Present, All the Justices.

The opinion states the case.

*Francis C. Lee, Assistant Attorney General (A. S. Harrison, Jr., Attorney General; M. Ray Johnston, Assistant Attorney General, on brief), for the appellant.*

*Thomas H. Willcox (Edward R. Willcox, Jr.; Willcox, Cooke, Savage & Lawrence,* on brief), for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This is a suit in equity by John E. Marr and his two lessees against the State Highway Commission and the State Highway Commissioner seeking to enjoin the defendants from maintaining a "no left turn" sign at an opening in the median strip dividing U. S. Route 58, the Virginia Beach Boulevard, in front of Marr's property, and to recover damages.

Prior to 1950 the Boulevard was a three-lane highway as it ran eastwardly from Norfolk to Virginia Beach. The Marr property adjoined the highway on the north and on it are a restaurant and dance hall now operated by his lessees. The Highway Commission decided to change the Boulevard into a limited access highway with two eastbound and two westbound lanes divided by a median strip or island having gaps or crossovers therein, and with a service or access road on each side. To make this change it needed a strip of the Marr land about 840 feet in length along the north side of the existing right of way.

By written contract dated November 29, 1949, Marr and his wife agreed to convey this strip of land to the Commonwealth for which Marr was to receive $2,000 "TOTAL for land, any and all damages." The contract contained this paragraph:

"It is understood and agreed between the parties hereto that the State Highway Department will move the cross over from its present location as shown on plans to Sta. 603 + 00, which is in effect approximately opposite the center of the Restaurant owned by the landowner."

The contract specified that it was understood and agreed by Marr for himself, his heirs and assigns, that the land to be conveyed was to be used in connection with the limited access highway, and the conveyance would include all rights of easement and access pursuant to the provisions of Chapter 78 of the Acts of the General Assembly, 1942; and that "the consideration herein mentioned" should be in lieu of all claims to compensation and damages by reason of the location, construction and maintenance of the highway.

This contract was followed by a deed from Marr and his wife to the Commonwealth of Virginia dated February 10, 1950, conveying

the land embraced in the contract. This deed did not include or make any reference to the provision of the contract that the Department "will move the crossover from its present location" to a point approximately opposite the center of the restaurant. The deed recited that it was made in consideration of the benefits accruing or to accrue to the grantor by reason of the location and construction of the highway, and for further consideration paid to the grantor. It was covenanted by the grantor for himself, his heirs and assigns, that the land conveyed was to be used for or in connection with the limited access highway, "and this deed is intended to convey all rights and easements of access, light or air by reason of the fact that the land herein conveyed in fee simple abuts upon said Limited Access Highway."

It was further covenanted and agreed that the conveyance was made pursuant to Chapter 78, Acts 1942, as if fully set forth in the deed, which should be a covenant running with any remaining land of the grantor abutting on the land conveyed; but, as the deed provided, "Nothing herein contained shall be construed as denying the grantor the right of access from his remaining lands to any service road now or hereafter constructed by the grantee to provide access to said Limited Access Highway."

This deed was made with covenants of general warranty and the full English covenants, followed by this provision:

"The said grantor covenants and agrees for himself, his heirs and assigns and successors, that the considerations hereinabove mentioned and paid to him shall be in lieu of any and all claims to compensation and damages by reason of the location, construction, and maintenance of said highway, including such drainage facilities as may be necessary."

The complainants' bill and amended bill alleged in substance that as part of the consideration for the strip of land so conveyed the Commonwealth of Virginia expressly agreed to construct in the median strip opposite the Marr restaurant an opening or crossover to permit ingress to said premises from the eastbound travel lanes and egress from said premises into the eastbound travel lanes, and to maintain said opening or crossover permanently; and that in pursuance of that agreement the opening or crossover was established and had remained in use continuously until April 1957 when the defendants, "the State Highway Commission and the State Highway Commissioner," violated the contract by erecting at both the east and

west ends of the crossover "no left turn" signs, the effect of which had been practically to destroy the business of Marr's tenants and to render them unable to pay their rent. The prayer was that the defendants be permanently enjoined from maintaining the signs and that the complainants be awarded damages which had been caused thereby.

The defendants filed a demurrer which was overruled, and then an answer in which they denied that they had agreed to maintain the crossover or that they had the power or authority to enter into any such undertaking on a permanent basis. They denied that the contract referred to prohibited the erection of such signs, and alleged that if so interpreted it was void, was merged in the deed of Feburary 10, 1950, and was in conflict with that deed.

The court heard evidence *ore tenus*, which related mainly to the traffic conditions, the use of the crossovers, the accident experience, the incovenient way eastbound traffic was required to enter the Marr property because of the signs, and the damage that had resulted therefrom. Marr testified that he dealt with Christian as the representative of the Highway Department, who agreed "that he would put the crossover in front of [Marr's] place," in consideration of which he, Marr, agreed to sell and convey his property for much less than others were paid.

Christian, a right of way engineer for the Highway Department, testified that before the contract was signed Marr insisted that the crossover be moved from the point where it had been formerly projected to a point in front of his premises, and upon its being so agreed Marr did not "haggle over the price." Later Marr's counsel wrote to the then Chairman of the Highway Commission that it was Marr's understanding that the opening would be wider than it was being constructed, which was 40 feet, and offered to compromise on 50 feet. An assistant right of way engineer replied that the plans were being revised to accord with the understanding between Marr and the representative of the Highway Department.

Neither Marr nor Christian nor any other witness testified to any agreement with respect to this crossover other than as expressed in the written contract quoted above and as referred to in this correspondence with respect to its width.

After considering the evidence, including the contract and deed, the trial court upon reasoning set forth in a written opinion entered the decree appealed from permanently enjoining the State Highway

Commission, the State Highway Commissioner and his successors in office, from erecting and maintaining "no left turn" signs at the crossover in front of the Marr property, and from preventing or prohibiting vehicles from making left turns through such crossover; and decreeing that the complainants were entitled to recover from the defendants such damages as they had theretofore suffered and would suffer until the effective date of the injunction. A commissioner was appointed and directed to ascertain and report the amount of these damages.

The defendants assigned error and on this appeal they contend that the trial court was without jurisdiction to entertain the suit and enter the decree; that the contract was not subject to the construction given it by the trial court; that if it was then it was not admissible in evidence because it would be inconsistent with and alter the terms of the deed; and as so construed it would be void under § 159 of the Constitution as abridging the police power.

The question of jurisdiction was not raised in the trial court but the complainants concede that if it is in fact a matter of jurisdiction the question may be raised for the first time in this court. *Wilson* v. *State Highway Com.*, 174 Va. 82, 93-4, 4 S. E. 2d 746, 751; 11 Mich. Jur., Jurisdiction, § 33, p. 456. The complainants argue that it is a question of venue and that objection here comes too late. Code § 8-133; Rule 2:10; *Moore* v. *N. & W. Ry. Co.*, 124 Va. 628, 98 S. E. 635. They say this is not a suit against the Commonwealth but against the State Highway Department; that though it arises out of a contract made between Marr and the Commonwealth, yet the appellants are the parties guilty of the acts which gave rise to the suit.

In this connection it is important to ascertain the essential nature of the complainants' claim. It is based on the contract of sale of November 29, 1949, from Marr to the Commonwealth, which stated that it was agreed between the parties that the Highway Department "will move the cross over from its present location as shown on plans to Sta. 603 + 00." The evidence shows, the court found, and it is not disputed, that the crossover was later made in accordance with this agreement. Nobody testified that there was any other or additional agreement. This contract was followed by the deed of February 10, 1950, conveying to the Commonwealth the strip of land adjoining its existing right of way, owned by it in fee simple. The deed expressly provided that it was intended to convey all rights

and easements of access, and that it was made pursuant to the provisions of Acts 1942, Chapter 78' (Code 1950, §§ 33-37 to 33-43). This Act defined a limited access highway as one especially designed for through traffic, over which abutters have no easement of access, and all existing easements of access, etc., "shall be extinguished by the Commission where necessary and service roads shall be constructed in accordance with the plans and specifications of the Commission." Code 1950, § 33-39.

In this instance Marr's property and his rights of access were acquired by the Commonwealth by his duly executed deed, which did not mention the crossover, and by which Marr covenanted for himself, his heirs and assigns, as noted above, that the consideration mentioned in the deed and paid to him should be in lieu of all claims to compensation and damages by reason of the location, construction and maintenance of the highway.

The questions then arise: From what source, in what manner, and by what authority have the complainants acquired a right which entitles them to an injunction prohibiting the Highway Commission and the Highway Commissioner from establishing a traffic regulation at the crossover in question on this highway; and to have judgment for damages caused thereby, and against whom?

The complainants assert and the court held that such right derives from the provision of the contract for relocating one of the crossovers shown on the plans so it would be in front of the Marr property; the purpose being, said the court, to enable traffic on the south side of the highway to reach the Marr property, and it was not to be supposed that after the crossover was made traffic would not be allowed to use it. Accordingly the court held that this provision of the contract created a servitude in favor of Marr on the existing highway owned by the Commonwealth which could be eliminated only by process of law and payment of damage. Thus the contract was construed to mean that the crossover must always remain open and the right of eastbound traffic to turn left through it never be prohibited.

As noted above, such an agreement was not expressed in the contract and was not testified to by any witness. It is also in conflict with the terms of the deed.

The property on which the crossover was erected, as the trial court observed, was owned in fee by the Commonwealth. Neither Christian, the right of way engineer who dealt with Marr, nor the High-

way Commission itself had power to create a servitude on the property of the Commonwealth for the benefit of an adjoining property owner in the absence of authority from the General Assembly, and even the power of that body to grant to Marr the right or privilege asserted in this suit might well be limited by § 63 (18) of the Constitution relating to special privileges, and by § 159 of the Constitution prohibiting any abridgment of the police power, of which the right to regulate and control traffic in the interest of public safety is clearly an exercise. *Commonwealth* v. *Ellett*, 174 Va. 403, 4 S. E. 2d 762.

The State Highway Commission is an administrative department of the State, given powers and charged with duties defined by statute, "including the power to make rules and regulations governing traffic," which "shall have the force and effect of law." The State Highway Commissioner is its chairman and also possesses the powers defined by statute. Code 1950, Title 33, Chapter 1, Article 1; *Southern Ry. Co.* v. *Commonwealth*, 159 Va. 779, 786, 167 S. E. 578, 579. The State Highway Commission and the State Highway Commissioner committed no tort in erecting the "no left turn" signs at the crossover. They neither invaded nor trespassed upon any property right belonging to Marr or his lessees.

The complainants' suit is essentially one against the Commonwealth asserting a claim for damages for breach of contract and as such cognizable only in the Circuit Court of the City of Richmond. Code 1950, §§ 2-193, 8-752 through 8-757, 8-38, 8-40.

In *Sayers* v. *Bullar*, 180 Va. 222, 225, 22 S. E. 2d 9, 10, it was said:

"A State cannot be sued except by its permission, and even if the suit, in form, be against the officers and agents of the State, yet if, in effect, it be against the State, is is not maintainable. Sections 2578 to 2583 of the Virginia Code (Michie) [now §§ 8-752 to 8-757, Code 1950] provide the only cases and the procedure in which actions may be maintained against the State. * *." See also *Eriksen* v. *Anderson*, 195 Va. 655, 658, 79 S. E. 2d 597, 599.

Previously, in *Stuart* v. *Smith-Courtney Co.*, 123 Va. 231, 234, 96 S. E. 241, 242, it had been said: "The question is not a new one in this State, and it may be regarded as settled that proceedings based upon contracts will lie against the State and its agencies by authority of this statute [§ 746, Code 1904; now § 8-752, Code 1950]. Sections 747, 748 and 749 [now 8-753, 8-754, 8-755] immediately fol-

lowing, provide for the procedure, while § 750 [now 8-756] limits the effect of judgments which may be rendered against the Commonwealth in such proceedings. * *." See also *Taylor, Acting Treasurer v. Williams*, 78 Va. 422, 428; *Ragland v. Broadnax et als.*, 70 Va. (29 Gratt.) 401, 415.

*Commonwealth v. Carter*, 126 Va. 469, 102 S. E. 58, relied on by complainants to sustain their contention that the question is only one of venue, was an equity suit brought in Clarke county to restrain the collection of inheritance taxes. The Auditor was not made a party but voluntarily appeared, filed pleadings and the case was heard on its merits by consent. On his claim on appeal that the suit should have been brought in Richmond according to § 6049 of the 1919 Code, the court held that although it would have been the duty of the trial court "to change the venue had the proper motion been made, such a question cannot be raised for the first time in this court after such a waiver in the trial court." 126 Va. at 476, 102 S. E. at 60. *Cf. Johnson v. Hampton Institute*, 105 Va. 319, 325, 54 S. E. 31, 33.

In the present case, however, the complainants assert a pecuniary claim against the Commonwealth which § 2-193 of the Code requires to be presented to the Comptroller, and upon his refusal to pay suit could be brought in the Circuit Court of the City of Richmond, to which the Comptroller must be a defendant (Code § 8-753). The Comptroller was not made a party to the present suit, did not appear or defend, and made no waiver. Code § 8-40 provides that if such a suit be brought elsewhere than in the Circuit Court of the City of Richmond, any judgment or decree against the Commonwealth shall be void. In this case the matter is not one of venue but is jurisdictional as held in the cases above cited. See also Burks Pl. & Pr., 4 ed., § 37 at p. 60. The present case is also to be distinguished from *State Highway Com. v. Nock*, 138 Va. 212, 215, 120 S. E. 869, which was held to be a suit not against the State or one of its agencies, but "against the individuals alleged to be invading the private property rights of the appellee under color of their office."

It was of course expected by the parties that the crossover when made was to be used. The presumption is, however, that its use was to be subject to the regulations of the Highway Commission made pursuant to law, as were all the others on the highway, and not a presumption that it should include a right which Christian had no power or authority to grant. To give the contract to re-

locate the crossover the meaning claimed by the complainants would bring it in conflict with the terms of the subsequent deed and render it inadmissible in evidence.

In *Woodson* v. *Smith*, 128 Va. 652, 656, 104 S. E. 794, 795, the controlling principle is well stated in this language:

" \* \* Doubtless many cases may arise in which distinct and un-performed stipulations contained in a contract for sale will not be merged in or discharged by deed where that instrument is silent upon the subject of such stipulations. In such cases there is no conflict between the contract and the deed. But the deed must be regarded as the sole and final expression of the agreement between the parties as to every subject which it undertakes to deal with. All inconsistencies between the prior contract and the deed must be determined by the latter alone, and previous negotiations or agreements, verbal or written, cannot be set up for the purpose of contradicting it."

In *Adams v. Seymour*, 191 Va. 372, 382-3, 61 S. E. 2d 23, 27-8, we said that this principle applies to proof of consideration in a deed, and that "parol evidence to prove consideration is not admissible if its real effect is to alter or contradict the terms of the deed." We said in that case that *Sale* v. *Figg*, 164 Va. 402, 180 S. E. 173, relied on here, "was an instance of a collateral agreement, not contradictory of the terms or import of the written instrument, and hence provable by parol evidence." Similarly, in *Collins* v. *Lyon*, 181 Va. 230, 245, 24 S. E. 2d 572, 579, we quoted with approval from a note in 84 A.L.R. 1008 to the effect that a deed is commonly but a part execution of a prior contract, and parol evidence is admissible to show the true consideration and all other parts of the transaction, not inconsistent with the recitals in the deed, provided the fact of conveyance is not affected by it. See "The Parol Evidence Rule in Virginia" by Dean Moreland, 3 W. & L. Law Rev. 185, 204.

We hold that the trial court did not have jurisdiction to enter the decree complained of and said decree is accordingly reversed and annulled and the suit dismissed.

*Reversed and dismissed.*